524 F.2d 98
 Alfredo G. PARRISH et al., etc., Plaintiffs-Appellants,
v.
BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR et al.,
etc., Defendants- Appellees.
ALABAMA BLACK LAWYERS ASSOCIATION et al., Plaintiffs-Appellants,
v.
BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR, etc., et
al., Defendants- Appellees.
 Nos. 73-3553, 74-1523.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 4, 1975.
 
 U. W. Clemon, Birmingham, Ala., Elaine R. Jones, New York City, for plaintiffs-appellants.
 Truman Hobbs, Champ Lyons, Jr., and William H. Morrow, Jr., Montgomery, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before BROWN, Chief Judge, TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON,* MORGAN, CLARK, RONEY and GEE, Circuit Judges.
 BELL, Circuit Judge:
 
 
 1
 This appeal involves one assignment of error directed to the denial of a motion, filed pursuant to 28 U.S.C.A. § 144, to disqualify the district judge who decided the matter. There are other assignments of error arising from the merits of the suit which claimed discrimination in the administration of the Alabama bar examination.[1] We consider en banc only the assignment of error having to do with disqualification.[2] As will be seen, we find no error in the denial of the motion to disqualify, and thus the cause will be remanded to the original hearing panel for disposition of the other questions presented.I.
 
 
 2
 The threshold requirement under the § 144 disqualification procedure is that a party file an affidavit demonstrating personal bias or prejudice on the part of the district judge against that party or in favor of an adverse party.[3] Once the affidavit is filed, further activity of the judge against whom it is filed is circumscribed except as allowed by the statute. In terms of the statute, there are three issues to be determined: (1) was the affidavit timely filed; (2) was it accompanied by the necessary certificate of counsel of record; and (3) is the affidavit sufficient in statutory terms? See generally 13 Wright, Miller & Cooper, Federal Practice and Procedure §§ 3541-53 (1975).
 
 
 3
 We are concerned only with the third issue. As we said in Davis v. Board of School Commissioners of Mobile County, 5 Cir., 1975, 517 F.2d 1044:
 
 
 4
 "Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matters alleged. See Berger v. United States, 1921, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; United States v. Roca-Alvarez, 5 Cir., 1971, 451 F.2d 843, 847-48; United States v. Townsend, 3 Cir., 1973, 478 F.2d 1072."
 
 
 5
 517 F.2d at 1051.
 
 
 6
 Legal sufficiency is determined as a question of law on the basis whether the affidavit sets out facts and reasons for the party's belief that the judge has a personal bias and prejudice against the party or in favor of the adverse party. The facts and reasons set out in the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Berger v. United States, supra, 255 U.S. at 33, 41 S.Ct. at 233, 65 L.Ed. at 485.
 
 
 7
 The legal question presented is determined by applying the reasonable man standard to the facts and reasons stated in the affidavit. See United States v. Thompson, 3 Cir., 1973, 483 F.2d 527, which states the standard as requiring that the facts be such, their truth being assumed, as would "convince a reasonable man that a bias exists", 483 F.2d at 528.[4] The tripartite test of the Third Circuit is as follows:
 
 
 8
 "In an affidavit of bias, the affiant has the burden of making a three-fold showing:
 
 
 9
 "1. The facts must be material and stated with particularity;
 
 
 10
 "2. The facts must be such that, if true they would convince a reasonable man that a bias exists.
 
 
 11
 "3. The facts must show the bias is personal, as opposed to judicial, in nature."
 
 
 12
 483 F.2d at 528.
 
 
 13
 The pertinent part of the affidavit filed against Judge Varner is set out in the margin.[5] We consider it in light of the transcript developed in an examination of the district judge some weeks before the affidavit was filed.[6] See the discussion of the content of the transcript in the panel opinion, 5 Cir., 505 F.2d 12.
 
 
 14
 The factual bases in the affidavit of disqualification are also summarized in the panel opinion as follows:
 
 
 15
 "(1) that while Judge Varner was President of the Montgomery County Bar Association two years ago, the Association had a clause in its by-laws barring black members and that the judge never made any effort to invite black lawyers whom he knew to join;
 
 
 16
 "(2) that Judge Varner was acquainted with several defendants in the suit and all of defendants' counsel, and that he said he did not believe that any of the defendants whom he knew would intentionally misrepresent any of the matters related to the lawsuit."
 
 
 17
 505 F.2d at 17.
 
 II.
 
 18
 With these facts and the recited legal principles in mind, we proceed to a consideration of the sufficiency of the affidavit. Personal bias or prejudice is required under § 144. Neither of the factual bases alleged for recusal here raises an inference of personal bias or prejudice.
 
 
 19
 The first ground asserted, Judge Varner's past activities in the Montgomery Bar Association, is essentially an allegation based on the judge's background and states no specific facts that would suggest he would be anything but impartial in deciding the case before him. The claim of bias is general or impersonal at best. See Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273; Simmons v. United States, 5 Cir., 1937, 89 F.2d 591; Price v. Johnston, 9 Cir., 1942, 125 F.2d 806; Cf. United States v. Seiffert, 5 Cir., 1974, 501 F.2d 974, 977-78.
 
 
 20
 The second ground, regarding Judge Varner's acquaintance with some of the defendants and counsel, has been rejected as a basis for requiring the disqualification of a trial judge. See e. g. Simmons v. United States, 5 Cir., Supra; Parker Precision Products Co., Inc. v. Metropolitan Life Insurance Co., 3 Cir., 1969, 407 F.2d 1070, 1077; Broome v. Simon, W.D.La., 1965, 255 F.Supp. 434, 438. The argument is that Judge Varner would be biased when it came to making credibility choices among witnesses. His statements made when being examined by counsel as to his possible disqualification were no more than an acknowledgement of friendship or acquaintanceship, and a refusal to condemn these persons as unworthy of belief in advance of whatever their testimony might prove to be. A statement by Judge Varner that he would believe, without question, any testimony of such persons would require a different result. Here, however, Judge Varner's answers did not reflect a lack of impartiality. The additional ground of the friendship between the judge and counsel for appellees, without more, is so lacking in merit as to warrant no discussion.
 
 
 21
 In short, the affidavit, including the facts on which it was based, was legally insufficient under § 144 to require disqualification. Judge Varner did not err in so ruling.
 
 III.
 
 22
 We next consider questions which arise in an unusual context. Title 28, § 455, was amended effective December 5, 1974. The order of the district court being appealed from was entered and the panel opinion of this court was issued prior to December 5, 1974. Appellants suggest, nevertheless, that because the court determined to hear the cause en banc, and to receive supplemental briefs, the cause was thereby not "fully submitted" for appellate review prior to the effective date of the amendment.[7]
 
 
 23
 We held in Davis v. Board of School Commissioners of Mobile County, supra, that the amended statute applied where that appeal had not been fully submitted on the effective date of the Act. Here the appeal was submitted on June 11, 1974 when the original panel heard oral argument and took the cause under submission. Indeed, the panel opinion was issued on December 2, 1974, three days before the effective date of the Act. That opinion was withdrawn, however, and thus the matter continued under submission. Thereafter, on June 5, 1975, the court ordered the matter heard en banc and allowed supplemental briefs.
 
 
 24
 Assuming that an appeal is fully submitted after the briefing schedule has terminated and oral argument, if there is to be such, has taken place, then it may well be asserted that this cause was, in effect, reopened when the supplemental briefs were allowed on en banc consideration. Given this circumstance and the policy of the statute, we conclude that the question of disqualification must also be reviewed[8] under the standards now embraced in amended § 455. The questions to be considered go to the sufficiency of the affidavit, as bolstered, in the peculiar posture of this case, by the transcript of the pre-affidavit interview or examination of Judge Varner. They are questions of law and may be decided in this court although never presented to the district court. Davis v. Board of School Commissioners, supra.
 
 
 25
 There are now several standards in § 455.[9] Some go to specific conduct, but one, set out in § 455(a), is general and does not rest on the personal bias and prejudice stricture of §§ 144 and 455(b)(1). As we noted in Davis, supra, 517 F.2d at 1052, the language of § 455(a) was intended to displace the subjective "in the opinion of the judge" test for recusal under the old statute, and the so-called "duty to sit decisions". We also noted that § 455(a) was intended to substitute a "reasonable factual basis reasonable man test" in determining whether the judge should disqualify himself. See 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3542 (1975). See also, Frank, Commentary on Disqualification of Judges-Canon 3c, 1972, Utah L.Rev. 377, 379. Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L.Rev. 736, 745-50 (1973).
 
 
 26
 Considering first the § 455(a) claim, and the relevant facts and circumstances, we are of the view that a reasonable man would not infer that Judge Varner's "impartiality might reasonably be questioned". The facts have been stated in our discussion of the § 144 issue.
 
 
 27
 Judge Varner was president of a local bar association in which black lawyers were denied membership. This policy was changed during or shortly after his administration as president. As the affidavit makes clear, see Note 5, supra, he, at the least, set the change in policy in motion by appointing a committee to revise the by-laws. He is faulted for not making an effort to obtain membership for black lawyers through inviting them to join, yet he, in effect, did just this in having the by-law changed. Appellants' logic would catch saint and sinner alike. There is hardly any judge in this circuit who was not a member of a segregated bar association at one time, and many have held a high office in the bar associations. The way of life which included segregated bar associations has been eliminated but only a new generation of judges will be free from such a charge. In any event, this circumstance will not support a claim of lack of impartiality. Such a claim must be supported by facts which would raise a reasonable inference of a lack of impartiality on the part of a judge in the context of the issues presented in a particular law suit. There are no such facts here. The stated conduct of Judge Varner does not support such an inference.
 
 
 28
 The allegation of lack of impartiality stemming from Judge Varner's acquaintanceship or friendship with witnesses and defense counsel is likewise tenuous. It does not exceed what might be expected as background or associational activities with respect to the usual district judge. As a factual basis, the allegations fall short of supporting an inference of lack of impartiality under § 455(a).
 
 
 29
 The factual basis also falls short under § 455(b)(1), in that there is no particularized allegation that Judge Varner had "personal knowledge of disputed evidentiary facts concerning the proceeding". Credibility choices are not disputed facts.
 
 
 30
 There are two additional claims of disqualification under amended § 455. They are based on the membership of Judge Varner in the Alabama State Bar, an organization in which membership has long been compulsory under the integrated bar concept. Title 46, §§ 30, 42, Code of Alabama. Each claim is attenuated in the extreme.
 
 
 31
 First, it is suggested that Judge Varner has a substantial interest in the success of defendants in the suit because of his identification with the bar association. Appellants rely on § 455(b)(4) for this proposition. No interest exceeding mere membership is asserted. This is not a ground for disqualification.
 
 
 32
 The second ground based on the judge's bar association membership is that he has a financial interest in the outcome of this case because the bar association may be compelled to pay attorneys' fees should plaintiffs succeed. Although the amended § 455 states that any "financial interest" in the subject matter in controversy or any party to the proceeding requires recusal, the spectre of the potential obligation of the Board of Commissioners, a judicial organ of the state, Title 46, § 21 et seq., Code of Alabama, for attorneys' fees does not fall within the statutory definition of "financial interest". Section 455(d)(4), n. 9, supra.
 
 
 33
 We affirm as to the denial of the motion to disqualify. Except as to that issue, the appeal is remanded to the original panel for disposition.
 
 
 34
 JOHN R. BROWN, Chief Judge (specially concurring):
 
 
 35
 I concur in the result and all of Judge Bell's opinion in Parts II and III and all of the opinion in Part I except that portion which specifically adopts the test in the Third Circuit case of United States v. Thompson, 3 Cir., 1973, 483 F.2d 527. I believe that the portion of the test in Thompson that requires a finding that "the facts . . . if true . . . would convince a reasonable man that a bias exists " (emphasis added) can be read as requiring proof of bias in fact. I do not think that we need go this far. Under the other acceptable and frequently used test, whether a reasonable person could reasonably have a Belief of bias, this affidavit is still insufficient. Therefore, I would reach the same result, but I think that we need not decide at this point which of these two possibly divergent standards we should apply.
 
 GODBOLD, Circuit Judge (specially concurring):
 
 36
 I concur in the result and in Part II of Judge Bell's opinion. I agree with Judge Roney that we do not reach 28 U.S.C. § 455 standards.
 
 RONEY, Circuit Judge (specially concurring):
 
 37
 I concur in the result and Part II of Judge Bell's opinion. As to Part I, I join in Chief Judge Brown's concurrence. Part III considers a question which I do not believe is before the Court, I. e., whether the district judge's refusal to recuse himself was proper under 28 U.S.C.A. § 455 standards, as amended on December 5, 1974.
 
 
 38
 I agree that En banc consideration makes this an appellate review not "fully submitted," so that § 455, as amended, would apply To this appellate review, which means it would set the standard for recusal of any of our reviewing judges who might be challenged for bias. But that is not the question. The district judge sat at trial. What act applied To the trial? Congress clearly provided that the new § 455 Act "shall not apply to the trial of any proceeding" commenced prior to December 5, 1974. The trial of this proceeding was completed prior to that date. We are judging the correctness of that trial and should do so by the standard applying to it as clearly set forth in the statute.
 
 The Act amending § 455 provides:
 
 39
 This Act (amending this section) shall not apply to the trial of any proceeding commenced prior to the date of this Act (Dec. 5, 1974), nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act. Pub.L. 93-512, § 3, 88 Stat. 1609.
 
 
 40
 The application of this act to the district judge's refusal to recuse himself at trial of this proceeding envisions a provision as to when the amendment is to be applied In "appellate review," not To appellate review. Congressional approach, however, was to address the level "of any proceeding" that the statute would apply To. Part III of Judge Bell's opinion applies § 455 In appellate review To a trial of this proceeding to which the act specifically says it does not apply. It seems inconsistent to provide one standard of recusal for the trial judge to apply to himself at the trial, and provide a different standard by which to review the correctness of his failure to recuse. Apparently Congress thought so too. I would not apply the act contrary to the express directions of Congress.
 
 GEE, Circuit Judge (specially concurring):
 
 41
 The proper interpretation of Section 144 is a vexed matter with which I have long struggled. The belief of the parties that they are receiving even-handed justice, the apparency of justice to those not parties, the importance of both perceptions in maintaining the legitimacy of the judicial institution, the difficult decisions faced by a judge called upon to stand recused, and the practical implications of § 144 for the continued efficient functioning of the district courts in our circuit are some of the competing considerations. They are not easily harmonized, and, indeed, there may be no entirely satisfactory manner of implementing Section 144. And though I concur fully in the opinion of the court on the assumption that United States v. Berger, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed.2d 481 (1921), remains good law, I feel obliged to express my doubt that it does or should. For, in my respectful view, Berger represents an outdated rule which has been made tolerable in present circumstances only by engraftment of dubious exceptions.
 
 
 42
 The majority opinion reaffirms Berger's antique rule that whatever "facts" the recusal affidavit may assert cannot be questioned but must be accepted as gospel.[1] Such an approach gives free play to the unscrupulous or reckless affiant, willing to run his chance of a ponderous and unlikely prosecution for perjury and perhaps in little danger, since Berger seems to say that "affidavit" assertions made on mere information and belief will suffice for § 144 purposes.[2] Perjury charges have traditionally been based on falsely stated physical facts, and are rarely extended to representation of opinions. Suffice to say, establishing beyond reasonable doubt bad faith in assertion of a belief purportedly held at the time of an affidavit's filing is no light task.[3] For similar reasons, counsel will not likely fear disciplinary proceedings initiated by the local bar. I am reluctant to join in mandating a procedure which envisions, for example, that a judge must take as true an affidavit asserting, perhaps on "information and belief," that he has recently engaged in an acrimonious personal dispute with a defendant complete with particulars and is therefore disqualified to sit in his case, when the judge well knows that the affidavit has misidentified him and is mistaken. We go far enough when we read § 144 as withdrawing from the judge decision of the final fact, his own actual bias. We should not require him to conduct such a curious and hypothetical proceeding as deciding whether an apprehension or bias is reasonably supported by whatever suppositious state of facts a daring and unscrupulous, or perhaps merely misadvised and agitated, party may be willing to swear to.
 
 
 43
 Factual matters necessary to decision of preliminary questions, of which recusal is a prickly example, are routinely resolved by weighing and evaluating affidavits. See, e. g., Wright & Miller, Federal Practice and Procedure § 1373, at 714. Only three workable modes of deciding this particular question occur: (1) peremptory disqualification upon the mere filing of an affidavit; (2) decision of the issue by another magistrate than the one accused; or (3) decision either of actual bias or the reasonable appearance of it by the magistrate sought to be disqualified.
 
 
 44
 There are indications in the legislative history that peremptory disqualification was the legislative intent;[4] but this construction has never been adopted by any court. Reference to another magistrate is utterly foreign to the statutory scheme and raises its own problems of administrative inconvenience and delay. The statute's language gives fair support to the construction that the judge is not to determine bias-in-fact, and common sense supports the view that few if any humans can fairly decide whether they themselves are or are not biased in any given matter. But it is not too much to ask that a conscientious magistrate determine whether a given affidavit contains enough truth to fairly support a reasonable apprehension that he may be biased, or that an appellate court review that decision effectively. There is, therefore, no need to discern in § 144 a rule by which a party who really wants to do so and has the nerve can at pleasure disqualify any federal judge in a given proceeding by presenting to him a spurious set of ex parte "facts" which he cannot question and by which his opponent can disqualify his first replacement by the same means.[5]
 
 
 45
 I freely admit that Berger appears on its face to foreclose my reading of § 144. The Berger decision, however, has not gone unscathed even by its authors in the many years since 1921. It is notorious that, faced with its quixotism, courts on the firing line have, addressing other issues, limited its scope in ways perhaps dubious. As is duly observed, for example, in Comment, 57 Minn.L.Rev. 749, 755 (1973), the lower federal courts have effectively rejected a liberal reading of Berger by such anomalous and desperate devices as requiring that the affidavit establish Bias-in-fact, United States v. Gilboy, 162 F.Supp. 384, 393 (M.D.Pa.1958), by restricting the Types of facts which may constitute a sufficient affidavit, Chessman v. Teets, 239 F.2d 205, 215 (9th Cir. 1956), Rev'd on other grounds, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957), and by requiring that the bias be directed to the party Personally, Cole v. Lowe's Inc., 76 F.Supp. 872, 876 (S.C.Cal.1948), Rev'd on other grounds, 185 F.2d 641 (9th Cir. 1950), Cert. denied, 340 U.S. 954, 71 S.Ct. 570, 95 L.Ed. 688 (1951). The Supreme Court has directly approved one such inroad in United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), holding that the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Although the Grinnell Court cited Berger, the proposition stated can be construed far more broadly than anything mentioned there. Also, Berger to the contrary notwithstanding, it is far from clear that the Supreme Court in Grinnell felt itself bound to accept as given fact the allegations made by the affiants: in its opinion the Court quotes from what can only be the transcript of pretrial proceedings, a type of matter which the Berger Court went out of its way to declare irrelevant. In other instances the Court has denied certiorari and left standing inroads on and narrow interpretations of Berger. See, e. g., Pfizer, Inc. v. Lord, 456 F.2d 532 (8th Cir.), Cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972);[6] Mirra v. United States, 379 F.2d 782, 787-88 (2d Cir.), Cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); Ryan v. United States, 99 F.2d 864, 871 (8th Cir. 1938), Cert. denied, 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed. 1037 (1939). I am all but convinced that if faced with the facts of Berger today the Supreme Court would decide it otherwise. Being so persuaded, I would not lightly expose our circuit to such risks of wholesale disruption as an untimely resurrection of Berger in its pristine and literal form threatens, to be endured until the Supreme Court grappling with the mighty concerns which face it is able to reconsider these questions.
 
 
 46
 Finally, I realize that the approach to § 144 I advance is likely foreclosed even by previous panel decisions in our own circuit. Davis v. Board of School Comm'rs, 517 F.2d 1044 (5th Cir. 1975); United States v. Roca-Alvarez, 451 F.2d 843, 847-48 (5th Cir. 1971), Rehearing granted, 474 F.2d 1274 (5th Cir. 1973); Beland v. United States, 117 F.2d 958, 960 (5th Cir.), Cert. denied, 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941); Simmons v. United States, 89 F.2d 591, 592-93 (5th Cir.), Cert. denied, 302 U.S. 700, 58 S.Ct. 19, 82 L.Ed. 540 (1937), and indeed Henry v. Speer, 201 F. 869 (5th Cir. 1913), quoted with approval in Berger. But I do not think such a position wise or practical, and the court en banc is free to adopt a different one. I would grasp the nettle now.
 
 
 47
 TUTTLE, Circuit Judge, with whom GOLDBERG, Circuit Judge, joins, dissenting.
 
 
 48
 With deference I disagree with the opinion of the Court as to the standard that is to be used by the Court in determining whether an affidavit for bias filed under § 144 is "sufficient." I agree with the statement quoted in the opinion from Davis v. Board of School Commissioners of Mobile County, 517 F.2d 1044 (5th Cir. 1975):
 
 
 49
 "Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matters alleged. See Berger v. United States, 1921, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; United States v. Roca-Alvarez, 5 Cir., 1971, 451 F.2d 843, 847-48; United States v. Townsend, 3 Cir., 1973, 478 F.2d 1072."I cannot agree, however, that the standard of determining the "legal sufficiency of the affidavit" is one that requires that the facts be such, their truth being assumed, as would "convince a reasonable man that a bias exists." As stated in the panel opinion of the Court, subsequently withdrawn, 5 Cir., 505 F.2d 12, I am of the view that the standard is one that merely requires that the facts be such, their truth being assumed, as would convince a reasonable man that the affiant reasonably Believed that bias exists.
 
 
 50
 Of course, this Court, sitting En banc, is writing on a clean slate, and in doing so the Court, very properly, I think, considers that the standard to be applied to the decision of this issue is one that must meet the requirements of § 455. It is my opinion that the Berger case, construing the predecessor of § 144 and the new amended § 455, outlined and discussed in the majority opinion, both require that the judge against whom an affidavit for bias is lodged must determine only whether the allegations are such as would cause a reasonable person standing in the same relationship as does the affiant to Believe that the challenged judge has a "bent of mind that may prevent or impede impartiality of judgment." Berger v. United States, 255 U.S. 22, 33, 41 S.Ct. 230, 233, 65 L.Ed. 481.
 
 
 51
 If what is called the "objective" standard, that is whether a reasonable man would conclude that bias actually exists had been the standard intended by the Supreme Court in Berger the Court would not have said that the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." It would have said rather that the affidavit "must give fair support to the existence or fact of a bent of mind, etc." In discussing the standard in Berger, the Court referred to the language that the "affidavit shall state the facts and the reasons for the belief" of the existence of the bias or prejudice. The Court said:
 
 
 52
 "Of course the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the Charge of a bent of mind . . .." (Emphasis added.)
 
 
 53
 It seems clear to me that this statement means that the affidavit must reasonably support the Belief of the affiant and not that it must reasonably support the actual existence of bias. This view has been expressed in the following language:
 
 
 54
 "A formulation . . . in keeping with the purpose of the statute would require only that the facts alleged must justify a reasonable apprehension on the part of the affiant that the judge may be biased (footnote omitted). This formulation shifts the emphasis from the judge's Actual state of mind to the reasonableness of the Litigant's fear, an emphasis at least supported, and possibly required, by the statutory language . . . " (Emphasis added.)
 
 
 55
 Disqualification of Judges for Bias in the Federal Courts, 79 Harv.L.Rev. 1435, 1446-47 (1966).
 
 
 56
 The approach which I would take to the construction of this statute seems to me much more consistent with the expression of this Court in United States v. Columbia Broadcasting System, Inc., 497 F.2d 107 (5th Cir. 1974) dealing with the basic right of a party to a fair and impartial tribunal:
 
 
 57
 "The recondite niceties of contempt law coupled with the strange milieu of a judge passing on the clarity of his own orders, which had to be substantiated largely by his own legal staff, should make us particularly sensitive To the demands of justice, and more particularly, to the appearance of justice. The guarantee to the defendant of a totally fair and impartial tribunal, and the protection of the integrity and dignity of the judicial process from Any hint or appearance of bias is the palladium of our judicial system." (Emphasis supplied.)I would conclude that a trial court cannot be free from "any hint or appearance of bias" unless a party's sworn Belief of the existence of bias, supported by substantial facts, and tested by a standard of reasonableness, is of primary concern.
 
 
 58
 The view which I hold as to the proper interpretation of § 144 is fortified by the recent enactment by Congress of amendments to § 455. This section of the Code provides as follows:
 
 
 59
 "(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."
 
 
 60
 The House Report on this bill which adopted major portions of the Senate Report, No. 93-419 to accompany the Senate Bill commented expressly on the relation between this amendment and the newly adopted Code of Judicial Conduct for United States Judges.[1] The Report contains the following language:
 
 
 61
 "Thus, the present situation is one where the Judicial Conference has made applicable to all federal judges the new Code of Judicial Conduct, including Canon 3C relating to disqualification of judges. The present language of § 455 of title 28 is less restrictive than the new Canon on disqualification. The bill (S. 1064) under consideration would amend section 455 by making it conform, with two exceptions, to the requirements of the canon on disqualification."
 
 
 62
 1974 U.S. Code Congressional & Administrative News, p. 6353.
 
 
 63
 Only one of the "exceptions" referred to in the foregoing language is relevant to our discussion. This exception is the change made in the third word of the Code of Judicial Conduct. Congress saw fit to change the words "a judge Should disqualify himself in a proceeding in which his impartiality might reasonably be questioned" to "a judge Shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned," thus indicating more clearly the intent of Congress that the standards be tightened up to the extent that less discretion was to be left to the particular judge.
 
 
 64
 Furthermore, the changing of the word from "should" to "shall" is explained by comments in the House Committee Report:
 
 
 65
 "The language also has the effect of removing the so-called 'duty to sit' which has become a gloss on the existing statute. See Edwards v. United States, 334 F.2d 360 (5th Cir. 1964). Under the interpretation set forth in the Edwards case, a judge, faced with a close question on disqualification, was urged to resolve the issue in favor of a 'duty to sit.' Such a concept has been criticized by legal writers and witnesses at the hearings were unanimously of the opinion that elimination of this 'duty to sit' would enhance public confidence in the impartiality of the judicial system."
 
 
 66
 More importantly, however, it seems to me to be clear that both the Code and the new § 455, which now speak in the same terms, has set up a standard involving the reasonableness of the belief or fear of the litigant rather than the reasonable likelihood of the existence of actual lack of impartiality. It will be noted that the language speaks in terms of the judge's impartiality being reasonably "questioned." It does not speak in terms of his partiality being reasonably likely to exist. Moreover, in the Committee Report the following language makes clear, it seems to me, that we are dealing with the reasonableness of the litigant's belief or fear of the existence of bias rather than the reasonableness of the claim that bias actually exists:
 
 
 67
 "Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial."
 
 
 68
 By clearest implication, it seems to me that this language says that the standard must be whether the litigant has a "reasonable fear" that the judge will not be impartial.
 
 
 69
 The use of the terms "objective" and "subjective" are somewhat confusing in this context. I agree that there must be an objective determination as to whether the facts and circumstances fairly support the litigant's belief or fear that there is a lack of impartiality. To this extent it is an objective test.
 
 
 70
 Under this test, therefore, I would have no doubt but that the affidavit in this case, considered in connection with the transcript of the hearing, which is proper in that it was attached as an exhibit to the affidavit, meets the test. We must bear in mind when we consider the facts alleged that what the whole case is about was the allegations that the defendants had intentionally discriminated in the conducting of bar examinations, the only means by which black applicants could become members of the Alabama Bar. Thus, the significance of each of the several facts, and the effect of their accumulation is what we should bear in mind.
 
 
 71
 Here, we have a challenge to the judge assigned to try this case alleging discrimination on account of race in the grading of bar examinations on the basis of the following factual setting: the lawyer for the plaintiffs and counsel for the defendants had held conversations off the record in the judge's chambers, apparently discussing the doubts that were in the minds of plaintiffs.[2] At this time no affidavit under § 144 had been filed. In effect, plaintiffs were undertaking to develop a basis for determining whether to file such an affidavit. The hearing conducted was in the form of questions and answers put to the judge by Mr. Clemon, counsel for the plaintiffs. This hearing developed the fact that the judge had been president of the Montgomery Bar Association shortly prior to being appointed to the bench and that at the time the rules of the Association forbade admission of black lawyers. When comment had been made in the public press about this fact and of Judge Varner's being considered for appointment to the United States Court, he appointed a commission to review the bar association by-laws, but gave no direction or recommendation that the racial restrictions be changed. They were subsequently changed, at a time which the judge thought was during his term of office; but as to this he was not certain.
 
 
 72
 We are not considering here merely former membership by the judge in a club or other social organization having restricted membership. We are concerned with a challenge to a judge who shortly before his appointment had been president of the bar association of the state's capital city, 50 years after the State Bar of Alabama had become, by law, the organized state bar. See Alabama Code Recompiled, Title 46, § 21 Et seq. It is not difficult to perceive the likelihood of a non-lawyer's confusing the status of the Montgomery Bar Association and its relationship with the State Bar of Alabama.
 
 
 73
 The additional grounds asserted in the affidavit as to the judge's relationship to the defendants cannot, it seems to me, be lightly overlooked because of prior decisions of this Court that an allegation that a judge was on a friendly basis with one of the witnesses expected to testify was not sufficient. Such was the case of Simmons v. United States, 89 F.2d 591 (5th Cir. 1937). Here, Judge Varner was acquainted with ten of the thirteen defendants who were members of the Board of Bar Examiners, three only slightly and several on a basis of what he considered friendship. Three of them he did not know at all. When asked as to the effect of his acquaintance or friendship with defendants in the event of a possible conflict in testimony in the anticipated hearings, Judge Varner, indicated a strong feeling of confidence in the veracity and trustworthiness of his friends. When asked expressly with respect to Mr. Scott, who had previously been secretary of the commission, and thus the one person who had custody of all of the documents, he expressed similar confidence in his likely credibility, noting that "if (Scott) appeared to evade I think I could detect it."[3]
 
 
 74
 The opinion of the Court proceeds on the theory that Judge Varner should not be faulted for answering honestly that he had a strong feeling of confidence in the veracity and trustworthiness of his friends. Of course, no one can take exception to the judge's answers to the inquiry. The point is that if a trial judge already has sufficient contacts with litigants who are to testify before him that he is compelled to answer truthfully that he already has a belief that they will be likely to tell the truth, the solution of the problem is not for him to refuse to answer or to hedge in answering a question but to recuse himself on the ground that one of the ingredients in the making of the final judgment will be matters dehors the record, that is, those qualities of friendship which have resulted in the judge having understandably a feeling of confidence in the veracity of the witnesses who are his friends. Of course, the judge answered the question in the only way he could. The problem arises from the fact to which he testified in making his answer; that is, that the affiants entered the litigation with at least a predilection in the judge's mind of favoring the veracity of opposing parties.
 
 
 75
 In sum, it appears to me that the combination of the facts alleged in the affidavit satisfied the requirements of § 144. Whether either one of the allegations standing alone would have been sufficient it is not necessary for me to decide. In addition to concluding, as I do, that the allegations in the affidavit were sufficient, it is more than clear that, even though the trial court should have adopted what the court now states to be the proper standard he did not even do that. He failed in two respects. In the first place, his statement quoted above clearly shows that he followed the theory of a "duty to sit," which clearly has been now eliminated under § 455. In the second place, he merely decided the question of bias Vel non rather than attempting to determine whether the affidavit was or was not sufficient by any standard.
 
 
 76
 Especially in light of the recent enactment of the amendments to § 455 it seems peculiarly inappropriate for an appellate court to take away from the trial court the opportunity to determine whether under the provisions of this newly enacted statute he should recuse himself because of his consciousness that "his impartiality might reasonably be questioned." This is an inquiry which, it seems to me, Congress clearly meant to have the trial judge make for himself. He is best able, under standards which are entirely new since the matter was before the trial court, to weigh the allegations of fact in the affidavit in connection with the particular lawsuit then pending before him and make a determination as contemplated under § 455. It seems to me that it is not our place to substitute our judgment for that of the trial court in the making of this initial determination.
 
 
 77
 I think this is peculiarly required in this case, since the trial judge clearly indicated an inclination to recuse himself but for his idea of a "duty to sit."[4]
 
 
 78
 Thus, even under the standard of inquiry announced by the Court it seems inappropriate to me for the Court to decide for the trial judge whether the affidavit was "sufficient" within the contemplated of § 144, with the gloss which is placed upon it by the amended § 455.
 
 
 79
 I would reverse the determination by the trial court overruling the affidavit and send the case back either under a determination that the affidavit was sufficient or to permit the trial court himself to determine under the standards now announced for the first time by this Court whether the affidavit met the requirements of the statute.
 
 WISDOM, Circuit Judge (dissenting):
 
 80
 I am in substantial agreement with Judge Tuttle's opinion. In particular, I would hold that, under Berger and the recent amendments to § 455, an affidavit alleging a judge's bias is sufficient if the facts alleged justify a reasonable belief on the part of the affiant that the judge may be biased. The principle involved is older than the concern Caeser had for Calpurnia's reputation.
 
 
 81
 I do not, however, attach the importance Judge Tuttle attaches to Judge Varner's acquaintance with ten of the thirteen defendants, with some of whom he was on terms of friendship. Any judge who has been an active practitioner and active member of bar associations knows and is probably friendly with most of his state's bar examiners. The plaintiff unquestionably was aware of this fact and that if it were a ground for disqualification every judge in a state could be disqualified. It is an unreasonable belief if the plaintiff had the belief that such a relationship between the district judge and the defendants might deprive the plaintiff of a fair trial.
 
 
 
 *
 Judge Simpson did not participate in this matter
 
 
 [1]
 There is no merit whatever in the jurisdictional objection of appellees
 
 
 [2]
 The panel opinion dated December 2, 1974 is reported. Parrish v. Board of Commissioners of the Alabama State Bar, 5 Cir., 1975, 505 F.2d 12. The opinion was withdrawn on February 20, 1975. Parrish v. Board of Commissioners of the Alabama State Bar, 5 Cir., 1975, 509 F.2d 540. The court determined on June 5, 1975, Sua sponte, to consider the matter en banc
 
 
 [3]
 § 144
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 
 
 [4]
 The reasonable man standard was first articulated in terms of requiring that the affidavit state facts "from which a sane and reasonable mind may fairly infer bias or prejudice." Keown v. Hughes, 1 Cir., 1920, 265 F. 572, 577. Accord, Craven v. United States, 1 Cir., 1927, 22 F.2d 605, 607; Wilkes v. United States, 9 Cir., 1935, 80 F.2d 285, 289; Hurd v. Letts, 1945, 80 U.S.App.D.C. 233, 152 F.2d 121, 122; Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273, 278
 
 
 [5]
 2. Plaintiff believes and avers that the judge before whom this action is pending, the Honorable Robert E. Varner, has a personal bias and prejudice against him, the other named plaintiffs, and the class represented by plaintiffs in this action
 
 
 [3]
 The facts and reasons for the belief that such personal bias and prejudice exist are as follows:
 a. The instant action complains, Inter alia, that the defendants maintain a policy of excluding blacks from the practice of law in the State of Alabama. The Honorable Robert E. Varner is presently a member of the Montgomery County (Alabama) Bar Association; and when he served as President of that association two years ago, black lawyers were excluded from membership in the said association under the terms of its by-laws. The Honorable Judge Varner was then acquainted with the five or six black lawyers who then practiced in Montgomery; but never made an effort to invite them to join the association. It was only after the aforesaid judge became interested in a federal judgeship that he, as president of the Montgomery County Bar Association, appointed a committee to revise the said by-laws; and the record is unclear as to whether the "white only" membership clause of the Montgomery County Bar Association was removed during his tenure as president of the aforesaid association.
 b. None of the plaintiffs in this case are personally acquainted with the Honorable Robert E. Varner. The said judge considers the defendant Commissioner Hill as a personal friend; he is a friend of Reginald Hamner, one of the chief defendants in the case; he is a friend of John Scott, defendant Hamner's predecessor in office and proposed to be called by the plaintiffs as an adverse witness; he is also a friend of counsel for all of the defendants. Further the said judge is personally acquainted with many of the other defendants in this cause. Although the testimony of the witnesses at the trial of this cause is expected to be conflicting in nature, the aforesaid Judge Varner has indicated that he does not believe that any of the defendants with whom he is acquainted would intentionally misrepresent any of the matters related to this lawsuit. Thus, plaintiffs sincerely believe that where the judge is called upon to make credibility choices throughout the trial, as he will be, he will attach undue weight to the testimony of his friends and acquaintances, all to the detriment of the plaintiffs and the class they represent.
 
 
 [6]
 The unorthodox procedure of an examination of the judge by counsel for plaintiff prior to filing the affidavit leads to some confusion on review. For example, plaintiffs take some comfort from Judge Varner's statement during the examination that he would not disqualify. This appears to them as a prejudgment. In any event, such prejudgment as existed was academic absent the required affidavit. The affidavit was filed 30 days later
 
 
 [7]
 The Act amending § 455 provides:
 This Act (amending this section) shall not apply to the trial of any proceeding commenced prior to the date of this Act (Dec. 5, 1974), nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act. Pub.L. 93-512, § 3, 88 Stat. 1609.
 
 
 [8]
 One caveat is important in the administration of §§ 144 and 455. Ordinarily the provisions of § 455 would be drawn into issue in determining the sufficiency of an affidavit under § 144 only to the extent that affiant relies upon those provisions in filing the affidavit. Here we consider the provisions of amended § 455 only because the amendment is made applicable to cases not fully submitted on appeal and because the amendment was not in being when the affidavit was made
 We described the relationship between § 144 and § 455 in Davis as follows:
 "The office of the procedure under § 144 is to disqualify a judge prior to trial on motion of a party. Section 455 is the statutory standard for disqualification of a judge. It is self-enforcing on the part of the judge. It may also be asserted by a party by motion in the trial court, Rapp v. Van Dusen, 3 Cir., 1965, 350 F.2d 806, 809; through assignment of error on appeal United States v. Seiffert, 5 Cir., 1974, 501 F.2d 974; Shadid v. Oklahoma City, 10 Cir., 1974, 494 F.2d 1267, 1268, by interlocutory appeal, as here, or by mandamus, Texaco, Inc. v. Chandler, 10 Cir., 1965, 354 F.2d 655."
 517 F.2d at 1051-52.
 
 
 [9]
 28 U.S.C.A. § 455, reads in pertinent part:
 (a) Any justice, judge magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 (b) He shall also disqualify himself in the following circumstances:
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;
 (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
 (d) For the purposes of this section the following words or phrases shall have the meaning indicated:
 (4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, . . .
 
 
 [1]
 And though it also reaffirms the settled rule that judicial actions cannot be made the basis of an accusation of bias, it should not be difficult for an inventive affiant to assert extra-judicial bases that disguise an aversion actually grounded in judicial philosophy and approach
 
 
 [2]
 255 U.S. at 34, 41 S.Ct. 230
 
 
 [3]
 The author of Note, 79 Harv.L.Rev. 1435 (1966), found no cases in which a perjury charge stemming from a § 144 affidavit had ever been prosecuted during the (then) forty-five years since Berger. Id. at 1442. Indeed, I have found none to date
 
 
 [4]
 The chief sponsor of the bill, asked if the judge retained any discretion after the filing of the recusal affidavit, replied: "No, it provides the judge shall proceed no further with the case." 46 Cong.Rec. 2627 (1911)
 
 
 [5]
 Section 144 limits a Party to " . . . one such affidavit in any case."
 
 
 [6]
 In Pfizer the court was interested in a demonstration of actual personal bias. In order to decide the issue the court "carefully examined the petition, the underlying joint affidavit, the responses thereto, And portions of the record pertinent to petitioners' claims." 456 F.2d at 533 (emphasis added). And, although accepting as true the facts recited in the affidavit, "(w)e determine the validity of petitioners' conclusion of bias By examining the cited facts against the record presented to us." 456 F.2d at 537 (emphasis added)
 
 
 [1]
 This Code of Judicial Conduct for United States Judges was adopted by the Judicial Conference of the United States in April, 1973
 
 
 [2]
 The transcript shows the following:
 "Gentlemen, you may want to have a seat at counsel table. I asked my court reporter to stay here this morning because, Mr. Clemon, (counsel for plaintiffs) I thought perhaps you would like to put some elements of our conversation on the record in regard to our question of whether or not I should recuse myself. I will have to say that I decided in cases earlier this week that these courts have been very reluctant about letting judges recuse themselves and I have really changed my attitude about it in the last two or three weeks. Heretofore, I had felt that a judge should recuse himself very quickly because it made the court appear more fair, but there are other obligations that the court owes and I am afraid that I shan't recuse myself but I want to give you an opportunity to put anything on record that you would like to put on record." (Emphasis supplied.)
 
 
 [3]
 It is of significance that none of these persons appeared to testify personally. The motion for summary judgment was based solely upon their affidavits. There, of course, were no opportunities to make any credibility choices by use of the normal standards available to a trial judge
 
 
 [4]
 See fn. 2, Supra. "Heretofore, I had felt that a judge should recuse himself very quickly Because it made the court appear more fair." (Emphasis added.)