**Willie BROWN, Plaintiff,**

v.

**STATE OF ALABAMA, Bruce Davis, Robert Beshears and James Sizemore, Defendants.**

**Civ. A. No. 89–C–0978–S.**

United States District Court, N.D. Alabama, S.D.

June 25, 1990.

David Barnes, Newton & May, Birmingham, Ala., for plaintiff.

John J. Breckenridge, Jr., Don E. Siegelman, Office of Attorney General, Montgomery, Ala., for State of Ala.

William B. Hairston, Jr., Engel Hairston & Johanson, Birmingham, Ala., for Davis Bruce, Robert Beshears and James Sizemore, defendants.

## MEMORANDUM OF OPINION ON DISQUALIFICATION ISSUE

CLEMON, District Judge.

Plaintiff Willie Brown, a black man, initially filed this action solely against the State of Alabama complaining that he was discharged by the state department of revenue because of his race, sex, and age. The race claim is predicated only on 42 U.S.C. § 1983, while the age and sex claims rest on 42 U.S.C. § 2000e. The Court granted the State's motion to dismiss the § 1983 claim, but it granted plaintiff's motion to add individual defendants Bruce Davis, Robert E. Beshears, and James Sizemore.[1] This judge is black; the individual defendants are white.

### I.

Beshears has timely filed a recusal affidavit pursuant to 28 U.S.C. § 144.[2] He seeks recusal only under § 144—which requires the Court to accept his factual allegations as true even if it knows them to be untrue. If the facts alleged are "legally sufficient," this judge may "proceed no further" herein; and the case must be assigned to another judge. *Berger v. U.S.*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). The facts alleged are deemed to be legally sufficient if they are such that, if true, would convince a reasonable person that a bias exists. *Parrish v. Bd of Commr's of Alabama State Bar*, 524 F.2d 98, 100 (5th Cir.1975).

Would a reasonable person harbor doubts that a taxpayer-judge has a "personal bias or prejudice" against a state tax official who filed a valid tax lien against him twelve years earlier?

The sole allegation of personal dealings between Beshears and this judge relates to a 1978 tax lien. As supervisor of assessment and collection for the department of revenue, Beshears in 1978 wrote to the judge, while the latter was an attorney, and advised him that a tax lien was being filed. Beshears filed the lien on the following day, and notified the judge of the department's provisional assessment and of a hearing to be held eleven days later on the final assessment. The hearing was never held, because this judge paid the full amount of the provisional assessment six days after receiving the notice. Beshears never saw or talked with him about the matter, and the judge has never indicated that the filing of the state tax lien was in any way improper or unfair.

A reasonable person, accepting these facts as true, would infer no bias or prejudice against the tax official by the taxpayer-judge. Such reasonable person would conclude that the judge, upon receiving notice of the lien, conceded its correctness and promptly paid the taxes. That reason-

---

1. Defendants Davis and Beshears are employees of the department of revenue; defendant Sizemore is the head of the department—the commissioner of revenue.

2. Neither the commissioner of revenue, co-defendant Bruce Davis, nor the State of Alabama has joined in the disqualification effort.

able person would infer that had the judge harbored any resentment of or hostility towards the tax official, he would have put the tax official to his proof—as he had a perfect legal right to do.[3] Instead, the judge voluntarily paid the tax before the final establishment of the legal obligation to do so—evincing an obvious desire to put the entire matter behind him.

A precious few, if any, citizens rejoice in the prospect of paying taxes. But only an unreasonable taxpayer would take offense at the tax collector who simply performs his/her job in any evenhanded manner. More importantly, only an unreasonable tax collector would fear any bias or prejudice at the hands of a judge to whom he had sent a valid uncontested tax lien twelve years earlier, and from whom he had heard nothing since the lien was satisfied.

■ The Beshears affidavit speaks to other matters.[4] It says that prior to 1982, this judge was habitually late in filing his tax returns; that these late filings resulted in additional interest and penalties; and that his tax returns have been the subject of numerous field audits and adjustments. Beshears does not allege any personal involvement with any of these alleged problems. Thus, his affidavit is legally insufficient insofar as these matters are concerned, for it is settled law that the bias alleged in a § 144 affidavit must be *personal bias against the affiant* or in favor of an adverse party. *Henry v. Speer*, 201 F. 869 (5th Cir.1913); *Berger v. U.S., su-*

*pra*, 255 U.S., at 32, 41 S.Ct. at 232–33; *Parrish, supra* at 100.

Accordingly, the motion for disqualification based on the affidavit of R.E. Beshears is hereby DENIED.

## II.

■ Although the alleged facts not relating to a personal bias against Beshears are legally insufficient under § 144, the Court has an independent responsibility, under 28 U.S.C. § 455, to determine whether a reasonable person, knowing all the facts, would harbor doubts concerning its impartiality. To be sure, an affidavit or motion may trigger the § 455 inquiry, but no action by a party is required—a judge must take the initiative when the circumstances indicate the propriety of an inquiry. Section 455 "places a judge under a self-enforcing obligation to recuse himself where the proper legal grounds exist." *U.S. v. State of Ala.*, 828 F.2d 1532, 1540 (11th Cir.1987). However, unlike § 144, the scope of the inquiry under § 455 is not limited to the facts averred in the recusal affidavit. "Section 455 does not require the judge to accept all allegations by the moving party as true." *U.S. v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986).

Taking the allegations of the recusal affidavit *seriatim*, the true facts are these:

1. With one exception, this judge's state tax returns were timely filed between 1975 and 1989.[5]

---

**3.** Under Alabama law, the fixed legal liability to pay an income tax is created not by the self-assessed tax return but only by the final levy and assessment of the department of revenue, which can be made only after a hearing or the failure of a taxpayer to appear for a scheduled hearing. § 40–18–40, *Code of Alabama of 1975; Alabama Educ. Ass'n v. Grayson*, 382 So.2d 501 (Ala. 1980).

**4.** The affidavit concludes that "[a]ccording to newspaper articles, copies attached, the lien ... was the subject of discussion at the trial judge's confirmation hearing." Neither of the attached articles indicates that the lien was the subject of discussion at the confirmation hearing. The affidavit also quotes this judge's 1979 statement that he had "no worries" with respect to the media charges that he was being investigated for income tax evasion. The quoted statement

is completely irrelevant; for there is no allegation or evidence that Beshears or anyone else in the state revenue or, for that matter, the Internal Revenue Service (IRS), has ever informed the judge that he was being investigated for income tax evasion.

**5.** Under the law of Alabama, the department of revenue may grant an extension of not more than six months for the filing of an individual taxpayer's return. Where an extension is requested, "the period during which such return will be considered timely filed shall not expire until ten days after the department of revenue mails to the taxpayer a rejection of his request for an extension of time for filing such return." § 40–18–27, *Code of Alabama of 1975* This judge sought extensions in those years in which he did not file by April 15; and he was never notified of a rejection.

2. The 1976 tax return of this judge was filed some seven months late.

3. The Beshears allegation that "[t]hese late filings required the income tax division to contact the judge to secure the filing" is untrue; the Income Tax Division did not contact him in either of those years concerning the filing of his tax return, other than in 1977.

4. *For every single year since 1979*, this judge has *overpaid his state taxes*, and *received a refund.*

5. On several of the state returns, there were minor arithmetic errors which either reduced or increased the size of the refund.

6. In the years that this judge has filed returns and paid state taxes, he can recall only two field audits. One of these resulted in a refund, the other resulted in an insubstantial increase in his tax liability.

7. This judge has not voiced any public criticism of the department of revenue or any of its employees or commissioners.

8. This judge has never been informed by anyone at the state department of revenue or IRS that he has *ever* been investigated for income tax evasion or for failure to file income tax returns.

9. This judge's friend and former accountant, James C. White, Sr., served as commissioner of revenue from 1983–1987.

10. The entire tax record of this judge was the subject of consideration at his confirmation hearings ten years ago. As best he can recall, the name Robert E. Beshears never surfaced. An agent of the Internal Revenue Service testified at the confirmation hearing; but after hearing him and evidence that a key IRS document had been altered to the detriment of this judge, the Judiciary Committee of the United States Senate by *unanimous vote* recommended that the latter be confirmed, and the United States Senate *unanimously* voted to confirm him as a district judge.

A reasonable person, knowing all these facts, would not harbor doubts concerning this judge's impartiality towards any of the defendants in these proceedings. Therefore, the Court, acting on its own initiative, finds and concludes that none of the circumstances alluded to in the Beshears affidavit warrants disqualification.

### III.

■ As shown in the preceding sections, this judge's prior dealings with the state department of revenue and its employees would not cause a reasonable person to harbor doubts concerning his impartiality. Unfortunately, this does not end the inquiry, for the actions of defendant Beshears in this proceeding raise a completely different concern under § 455(a).

The Beshears affidavit was not filed under seal. It is now a matter of public record.

Alabama has a strong public policy against public disclosure by tax officials of tax returns and the information contained therein. For more than half a century, state law has mandated that "all tax returns shall be *kept under lock and key* by the department of revenue ..." §§ 40–1–33; 40–18–52, *Code of Alabama of 1975.*[6] (emphasis added). In the absence of a court order, any official or employee who divulges the contents of "income tax returns and information secured by income tax officials or employees for the purpose of arriving at income taxes" commits a crime punishable by fine and imprisonment, and any person found guilty of this crime is thereafter "ineligible to hold the office of commissioner or become or be an employee or agent of the department of revenue." § 40–18–52, *Code of Alabama of 1975.*

This judge has been unable to verify the existence of any court order authorizing the release of his income tax returns and records to defendant Beshears and/or his attorney.[7] If no such order exists, then a crime may have been committed by defendant Beshears and possibly others, for this

---

6. Alabama law since 1935 has made it clear that "income tax returns and records ... shall not be open to public inspection." § 40–18–48, *Code of Alabama of 1975.*

7. Of course, the 1978 lien and related facts are already matters of public record as the lien was filed in the Jefferson County Probate Court and related matters were published in the media during 1979–80 era.

judge has not consented to the release of his tax records and their use in this proceeding.

Before disposing of the disqualification issue in its entirety, the Court must know whether Beshears or his attorney obtained the requisite court order prior to making public the otherwise confidential tax information. Upon being so advised, the Court will determine whether disqualification is warranted.

A federal judge does not renounce his rights as a citizen, including the right of privacy, when he takes the oath of office. If this judge's right of privacy has been invaded by a party to this proceeding, it would be inappropriate for him to remain in the case, for almost certainly any reasonable person would harbor doubts concerning his impartiality.[8]

Counsel for Beshears shall file with the Court a certified copy of any court order authorizing the release by said defendant of this judge's tax returns and other tax information. Should counsel fail to file such document, the Court will assume that none exists and proceed to pass on the ultimate issue of whether disqualification is warranted based on a possible violation of the judge's right of privacy by a party to this proceeding.

---

8. Indeed, this judge does not foreclose the possibility of his self-imposed disqualification even if a court order was properly obtained by one of the defendants.