**UNITED STATES of America**

v.

**Mersin D. ZAGARI.**

**Cr. 76–207–SC.**

United States District Court, N. D. California.

Aug. 11, 1976.

Philip Scott Ryan, San Francisco, Cal., for defendant Zagari.

Richard J. Sideman, Asst. U. S. Atty., San Francisco, Cal., amicus curiae.

## MEMORANDUM OPINION ON MOTION TO DISQUALIFY

BREWSTER, Senior District Judge.

A four count indictment charging the defendant with offenses of income tax evasion was returned into this Court on April 14, 1976. Judge Samuel Conti was drawn under the Assignment Plan of the District as the judge to try the case.[1] Philip Scott Ryan, counsel for the defendant, considered

---

1. No issue is made as to the fairness or validity of the assignment.

that they had had a bad draw,[2] and promptly set out upon a course to get a new judge to try the case. Counsel indicated in an appearance before the Magistrate two weeks after the return of the indictment that he expected Judge Conti to recuse himself. He wrote the Judge on May 13, 1976, suggesting that he disqualify in the case. The Judge rejected the suggestion. All this took place before the Judge ever saw the defendant or took any action in the case.

On May 23, 1976, the defendant filed a motion under 28 U.S.C., Secs. 144 [2a] and 455 [2b], supported by three affidavits, two by his counsel and the other by himself, asking the Judge to recuse himself. The Judge, pursuant to the statutory provisions, considered the legal sufficiency of the affidavits, found them to be inadequate, and entered an order on June 2, 1976, denying the motion. The case was set for trial for July 19, 1976.[3]

About a week later, Zagari filed with the Court of Appeals for the Ninth Circuit a "Petition for Supervisory Writ of Mandate", complaining basically that Judge

Conti had not given him a hearing on the motion to recuse.[4] The petition prays that:

(1) An order issue requiring all district court records in the case to be sent to the Court of Appeals to the end that they may be reviewed and determined by that Court.

(2) The Court of Appeals reverse Judge Conti's order refusing to disqualify himself.

(3) A writ of mandamus issue requiring Judge Conti to recuse himself; or, in the alternative a writ of prohibition issue enjoining him from proceeding further in the criminal case.

(4) Further proceedings in the criminal case be stayed pending the decision by the Court of Appeals.

The Court of Appeals granted a stay in the criminal case.

Judge Conti thereupon filed a request that the matter of his disqualification be heard by a judge from outside his Judicial District. He vacated his order on the motion for the purpose of enabling the assigned judge to hear the matter de novo. Chief Judge Peckham thereupon entered an order assigning the case to the undersigned

---

**2.** Mr. Ryan stated in the course of his argument in this hearing: "Judge Conti is a very strong sentencing judge. We all know that in the criminal business . . . ." (Tr., p. 57).

**2b.** The pertinent part of # 455 is:

§ 455. Disqualification of justice judge, magistrate, or referee in bankruptcy

(a) Any justice, judge, magistrate or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

**3.** The trial date was subsequently changed to September 20, 1976.

**4.** "What I am appealing from, and I think it is important, although it is in the—

"THE COURT: I understand you are not appealing.

"MR. RYAN: I am taking a writ, that's correct.

"What the writ addressed itself to is the absence of a hearing." (Tr. 7).

(The hearing Zagari had in mind had to be for the purpose of arguing the legal sufficiency of the affidavits attached to the motion, as he was taking the steadfast position until July 29, 1976, that an evidentiary hearing on his motion to disqualify was not permitted).

Senior United States District Judge for the Northern District of Texas, who was then sitting by designation on the United States District Court for the Northern District of California. This action was taken with the idea that the stay order was directed at proceedings ordinarily taken in the course of bringing a case to trial, and that it in no way interfered with the jurisdiction of the Court of Appeals.

Three threshold questions have to be decided before the Court gets into the merits of the claim of disqualification:

(1) Does the pendency of the mandamus action deprive this Court of jurisdiction to reconsider the motion to disqualify?

(2) Does any judge other than the one sought to be disqualified have authority to pass on the matter?

(3) Should the hearing, if any be had, be evidentiary?

■ On the first question, counsel for the defendant made it clear that he had no objection to the undersigned judge hearing the matter, if the Court had jurisdiction.[5] The correctness of a judge's action in refusing to disqualify himself is usually a matter to be decided on direct appeal from a judgment adverse to the complaining party.[6] *Albert v. U. S. District Court for Western District of Mich.,* 6 Cir., 283 F.2d 61 (1960), cert. den. 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706; *Dubnoff v. Goldstein,* 2 Cir., 385 F.2d 717 (1967). While the authorities are not uniform on the question,[7] even those which say that mandamus is an appropriate remedy hold that it should be resorted to only in exceptional circumstances, in view of the fact that the matter can be presented on appeal. *Rosen v. Sugar-*

*man,* 2 Cir., 357 F.2d 794 (1966); *Pfizer v. Lord,* 8 Cir., 456 F.2d 532 (1972). The following is quoted from the *Rosen* case:

"To be sure, writs in such cases should be issued sparingly and only when the facts alleged clearly call for relief, lest mandamus to review refusals of disqualification become a potent weapon for harassment and delay. . . ." 357 F.2d, at 794.

■ There is no final judgment in this case, and no pending appeal. The undersigned judge did not seek this job. He was asked to do it at a time when it appeared that an evidentiary hearing (which could not be held in the Court of Appeals) might possibly be involved. Under the circumstances of the assignment, the judge believed that the present practice was one which had been accepted and used with success several times in the federal courts in the Ninth Circuit. The hearing will therefore proceed to the extent that it does not appear to conflict with the jurisdiction of the Court of Appeals.

■ *Tenants & Owners, etc. v. U. S. Department of HUD,* D.C.N.D.Cal., 338 F.Supp. 29 (1972), is an answer to defendant's contention that the judge sought to be disqualified is the only one who can pass on the legal sufficiency of the affidavits supporting the motion. That case holds that while the judge under attack has authority to decide the question, there is no law which prohibits another qualified federal judge from doing it when properly requested. The Supreme Court mentions that the practice was followed in *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, fn. 13 on 793 (1966). Some of the reasons that have been

---

**5.** During the discussion of this question, Mr. Ryan said:

"I am concerned for a couple of reasons, and I have no personal problem with this court deciding the matter, if it has jurisdiction." Tr. p. 4.

That he had not changed his mind is shown by his following remark near the conclusion of the hearing:

"One final point, and you have been so patient with me, Judge, and I very much appreciate it, a point of clarification." Tr. p. 62.

**6.** A direct appeal from an order on a motion to disqualify lies only where the order is one granting the motion. *Kelley v. Metropolitan County Bd. of Ed. of Nashville,* 6 Cir., 479 F.2d 810 (1973).

**7.** See discussion in *Pfizer, Inc. v. Lord,* 456 F.2d, at 536.

given for the rule allowing the judge being questioned to pass on the legality of the motion are that otherwise the disqualification procedure could be used as a tool for delay and disruption of the administration of the courts, and that such judge knows better than anyone else whether he could give the parties a fair and impartial trial. The judiciary would be seriously crippled in the states or territories having only one [8] or two [9] federal judges if it were necessary to send to another state to get a judge to hear the motion. The defendant in this case was not deprived of the decision of the judge sought to be disqualified. Judge Conti considered the motion and denied it. The defendant did not like his decision and sought reconsideration. Although he did not have to do it, Judge Conti asked that an outside judge be assigned to reconsider the matter, and took action to make it possible that the hearing on the motion be de novo. The undersigned judge from a District in another Circuit, who happened to be sitting by designation in San Francisco at the time, accepted the assignment by the Chief Judge. The hearing was full and without limit on time of argument. It was the law clerk of counsel for defendant, and not the Court, who finally blew the whistle on counsel's argument.[10] The fact that the law clerk was also the wife of counsel for

defendant made the action much more effective than it ordinarily would have been. The defendant here got more, not less, than he was entitled to, and is therefore in no position to complain.

The Court felt that the authorities were clear on the proposition that no evidentiary hearing could be held under 28 U.S.C., Sec. 144,[11] but was ready to give such a hearing under Sec. 455, if counsel could show that it was permitted. The question was posed to them. The amicus curae attorney responded that he was unaware of any authorities authorizing the hearing.[12] Defense counsel, while stating that he would have no objection to an evidentiary hearing "personally", was of the firm conviction that Sec. 455 had not changed the rule that an evidentiary hearing could not be held on a motion to disqualify.[13] It was apparent that neither side wanted an evidentiary hearing and the Court proceeded to hear the matter on the basis of the legal sufficiency of the affidavits.

■ Decision on the motion was withheld for a few days to enable the court reporter to prepare a transcript of the proceedings. It was made known to counsel at the hearing on July 22nd that the undersigned judge was returning to his home in Texas at the conclusion of his San Francisco assignment on the following day. It was

8. Maine, New Hampshire, Rhode Island, Wyoming, Canal Zone, Guam.

9. Vermont, North Dakota, South Dakota, Montana, Idaho, Nevada, Utah, Alaska and Hawaii.

10. After the reply argument by amicus curae counsel, the following occurred:

"THE COURT: Mr. Ryan, you had about an hour. You can have some additional time.

"MR. RYAN: Very briefly, Your Honor. I have a note here from my clerk. It says, 'Why don't you shut up for a change, listen to the judge and answer his questions?'"

11. *Action Realty Co. v. Will,* 7 Cir., 427 F.2d 843 (1970); *Hodgson v. Liquor Salesmen's Union,* 2 Cir., 444 F.2d 1344 (1971); *United States v. Townsend,* 3 Cir., 478 F.2d 1072 (1973); *Morrison v. United States,* D.C.Tex., 321 F.Supp. 286 (1969), affirmed 432 F.2d 1227, cert. den. 401 U.S. 945, 91 S.Ct. 959, 28 L.Ed.2d 227.

12. Government counsel concluded his remarks on this subject with the statement:

"So, Your Honor, unfortunately, I don't feel I can give the Court the kind of guidance the Court has requested from me." Tr. p. 18.

13. The following is quoted from Mr. Ryan's discussion of the question:

"My belief is, Judge, the law is *very, very* clear that the materials contained in the affidavit must be assumed as being true and a determination made on their legal sufficiency *under both 144 and 455.*" Tr. p. 17.

"If Judge Conti wants to contest the facts and subject himself to cross-examination, and my sources of information would subject themselves to cross-examination, I don't believe I have any objection to that personally, and I would welcome it, but it is my belief *it is totally impermissible* and has been since the United States versus Berget was decided many, many years ago." Tr. p. 17.

(Emphasis above is added to correspond to emphasis of speaker).

generally known that Judge Conti would be away on his vacation and unavailable during the month of August. After the author hereof got back to Texas, and on the eve of Judge Conti's departure, counsel for the defendant began to exhibit a boldness that had been completely absent during the hearing. On August 2d, this Judge received a tear-stained motion from such counsel begging for an evidentiary hearing. Up to that time, his attitude had been one of extreme wariness, and he had spooked at almost every move. Even so, his proposal contained a joker. The motion says that counsel will reveal the identity of his heretofore closely concealed, faceless informants "upon a joining of the issues". *Rapp v. Van Dusen,* 3 Cir., 350 F.2d 806 (1965), condemns the practice of requiring a judge to join issue in mandamus proceedings directed at this official actions in cases "in which his role is judicial and in which he has no personal interest." 350 F.2d, at 813. Good reasons are given for such holding. From counsel's demeanor at the hearing on July 22nd, the Court was skeptical of his statement that he would like to have an evidentiary hearing. He was so emphatic, not once but twice, immediately after such statement, that it was legally impossible to have such a hearing.[14] Taking into consideration the circumstances connected with the present motion for the hearing and the background, the Court has serious reservations about the sincerity of the motion. Whether the defendant is sincere or not, the motion is denied because the defendant took the position that an evidentiary hearing would not be legally permissible when he was asked if he thought one could be given him, and because it is now impractical to complete one in time to avoid a continuance of the trial on September 20th.[15]

■ For the purpose of determining the legal sufficiency of the affidavits supporting a motion to disqualify, the factual allegations in the affidavit must be accepted as true. *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *Pfizer v. Lord,* 8 Cir., 456 F.2d 532 (1972), cert. den. 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676; *Davis v. Board of School Comrs. of Mobile County,* 5 Cir., 517 F.2d 1044 (1975); *Morrison v. United States,* D.C.Tex., 321 F.Supp. 286 (1969), affirmed, 432 F.2d 1227, cert. den. 401 U.S. 945, 91 S.Ct. 959, 28 L.Ed.2d 227. The rule applies even though the judge passing on the legal sufficiency of the affidavit knows the allegations thereof are false. *Hodgson v. Liquor Salesmen's Local No. 2,* 2 Cir., 444 F.2d 1344 (1971).

The only Sec. 144 built-in protections against abuse are:

(1) "The affidavit must state the facts and the reasons for the belief that bias or prejudice exists. . . ."

(2) The affidavit must "be accompanied by a certificate of counsel of record stating that it is made in good faith." [16]

(3) The imposition of a bag limit of one on the number of efforts allowed to disqualify a judge in a particular case.[17]

(4) The bias or prejudice necessary to disqualify must be a personal one either against the moving party or in favor of any adverse party.

(5) There is also the threat of prosecution for perjury flowing from the requirement

---

14. The defendant is not disadvantaged by lack of an evidentiary hearing. Without such a hearing, the statements in his affidavits must be accepted as true. The only purpose of evidence would be to establish the truth or falsity of such statements. It would, then, be all to lose and nothing to gain for him to have an evidentiary hearing.

15. If it were necessary to rely upon it, the Court would give the additional reason that counsel for the defendant has no right to impose the terms upon which the hearing would be held.

16. The protection of this provision, passed in 1948, has been eroded by the advent in recent years of the itinerant, scorched-earth type lawyer who regards it as open season on courts and judges and is hell-bent on destroying respect for them.

17. Sec. 144 contains the provision that: ". . . A party may file only one such affidavit in any case. . . ."

that effort to disqualify must be supported by affidavit.[18]

To avoid giving a party an almost absolute veto of one judge assigned to a case and the consequent disruption and delay of the judicial process, the courts have imposed some additional safeguards:

■ (1) The judge is presumed to be qualified, and there is a substantial burden upon the movant to show that such is not the case. *United States v. Thomas,* D.C. Mo., 299 F.Supp. 494 (1968); *Brown v. Wilson,* D.C.Pa., 363 F.Supp. 707 (1973).

■ (2) The affidavit is strictly construed for sufficiency against the party seeking disqualification. *Beland v. United States,* 5 Cir., 117 F.2d 958 (1941), cert. den. 313 U.S. 985, 61 S.Ct. 1110, 85 L.Ed. 1541.

■ (3) The statutory requirement that the affidavit must state the facts and reasons showing disqualification has been construed to require that it set forth the identifying facts of times, places, persons, occasions and circumstances with the particularity that would be reasonably expected in a bill of particulars. *Hodgson v. Liquor Salesmen's Local No. 2,* supra; *United States v. Mitchell,* D.C.D.C., 377 F.Supp. 1312 (1974). It must set out objective facts, as general or conclusory allegations will not support disqualification. *Griffith v. Edwards,* 8 Cir., 493 F.2d 495 (1974), cert. den. 419 U.S. 485, 95 S.Ct. 113, 42 L.Ed.2d 97.

■ (4) The facts in the affidavit must show that the bias or prejudice is personal, as opposed to judicial, in nature; that is, an attitude of extra-judicial origin. *United States v. Grinnell Corp.,* supra—384 U.S., at 583, 86 S.Ct. 1698; *Wolfson v. Palmieri,* 2 Cir., 396 F.2d 121 (1968); *United States v. Thompson,* 3 Cir., 483 F.2d 527 (1973); *United States v. Falcone,* 3 Cir., 505 F.2d 478 (1974); *Davis v. Board of Com'rs. of Mobile County,* supra.

■ While the facts set out in the affidavits must be accepted as true, the judge passing on the legal sufficiency of the affidavit is not required to accept the construction placed on them by the movant or the particular affiant. They "should be analyzed in context". *United States v. Mitchell,* supra, at p. 1316; *Tenants & Owners, etc. v. U. S. Dept. of HUD,* supra. The factual summary that follows is to put the alleged facts in context so that their legal sufficiency may be analyzed. Such alleged facts are taken from the affidavits of the defendant and his counsel and the exhibits attached to them.

The course of reasoning to disqualify Judge Conti is most devious. None of the grounds urged for disqualification asserts any bias or prejudice on the part of the Judge relating to the defendant, Zagari, or to any issue in this case. The defendant's claim is that Judge Conti is so prejudiced against his counsel, Mr. Ryan, on account of controversies between them in other litigation that he cannot give a fair trial in the present case.

The several cases comprising the other litigation revolve around C–73–0054–SW, *Dickenson et al. v. United States et al.,* in the United States District Court for the Northern District of California. That is a suit for damages arising out of the shooting of one Dirk Dickenson by a federal BNDD Agent in the course of a raid by him and other federal and California state agents on the premises occupied by Dickenson and his fiancee. That suit was in Judge Williams' court. Judge Conti had nothing to do with it.

The only intimation appearing in Zagari's affidavit of any relation, other than the alleged animosity between Ryan and Judge Conti, of the two cases is that (1) the government will rely on the net worth theory to prove the income tax evasion charges in this case; (2) that "parts of the evidence" which will be used against him relate to individuals and persons with whom he allegedly had associations or business transactions; and (3) it may be necessary

---

**18.** The weakness of this protection in this type of proceeding is pointed out in Judge Gee's concurring opinion in *Parrish v. Board of* *Com'rs. of Alabama State Bar,* 5 Cir., 524 F.2d 98, 105 (1975).

to call as a witness in his behalf "one or more of the parties and/or witnesses involved in the case of *Dickenson v. United States,* No. C–73–0054–SW". Zagari does not explain how or why any persons involved in a suit growing out of a dope raid would be material witnesses in his income tax case involving his business transactions.

Ryan says in his supplementary affidavit (p. 2): ". . . It should be noted that my practice is of a national nature and it is not unusual for me to try cases and be involved in litigation throughout the United States." An insight into the general nature of his nationwide practice can be gained from his statement quoted in footnote 2 above and from the Dickenson damage suit and so-called related cases.

Ryan and Jay Engel filed the Dickenson suit for the plaintiffs.[19] While the complaint asked for damages in the sum of $3,000,050.00, the face of the petition shows that it was not the kind of case where a trial would ordinarily result in a very substantial recovery. The deceased was twenty-four years old. The complaint does not allege that he had an income from a legitimate source. The only light shed on his background is the allegation that he fled when the narcotics agents descended "onto the premises of Judith Arnold and Dirk Dickenson". The plaintiffs consisted of his mother and father, his daughter and Judith Arnold. There is no claim that any of them had ever received or had reasonable expectation of receiving contributions from him. The complaint could be construed to allege that the daughter was not born to a marriage of the deceased. Ryan's affidavit says she was the daughter of Dirk Dickenson and Mercedes Ripley. Judith Arnold was the fiancee of Dirk Dickenson and was occupying the premises with him when they were raided. She was indicted along with other persons as a result of the raid.[20]

"The U.S. Department of Justice investigated the killing and found the agents innocent of any wrongdoing."[21] Ryan decided to bolster his weak civil suit by setting in motion federal administrative action and by helping procure a conviction of Agent Clifton.[22] The Congressman contacted by Ryan could not aid him in getting administrative action started. However, Ryan "developed a working relationship" with the then State District Attorney in Humboldt County, California,[23] and a state court indictment was returned charging Clifton with second degree murder and manslaughter.

In late July, 1974, the government, through its United States Attorney Browning in San Francisco, filed an application for writ of habeas corpus challenging the authority of the State of California to pro-

---

**19.** Ryan says that he employed Engel to assist him in the case.

**20.** CR. 72–479–WTS, *U. S. v. Judith Arnold, et al.,* in this court.

**21.** Quoted from page 5 of Exhibit "G" to one of Ryan's affidavits.

**22.** The following is from paragraph 12 of Ryan's affidavit: ". . . I had long held the tactical view that the civil suit would be greatly strengthened in the event that either administrative action were taken against Agent Clifton by the Department of Justice, or in the event that he was convicted in the State prosecution."

The following is from p. 4 of Petitioner's Responsive Pleading in C. No. 74–3503, *Dickenson v. United States,* attached as Exhibit "G" to one of Ryan's affidavits: ". . . Needless to say, if in fact U. S. Agent, Clifton, was convicted of manslaughter, the civil liability of the United States would be much more likely

assured . . . .." That pleading is signed by Ryan's associate counsel, Engel.

**23.** Paragraph 11 of Ryan's affidavit reads:

"11. During the course of the preparation for trial in *Dickenson v. United States,* No. C–73–0054–SW, I had been involved in an extensive investigation of the facts and circumstances and the background of the individuals involved herein. In the course of said investigation by me, I developed a working relationship with then District Attorney, William F. Ferroggiaro, Jr., who at all times relevant herein was the District Attorney of Humboldt County. In addition to making witnesses and evidence available to Mr. Ferroggiaro for his use in the criminal prosecution against Agent Lloyd Clifton, Mr. Ferroggiaro kept me abreast of the developments of the State Court prosecution consistent, however, with those confidences inherently imposed upon a public prosecutor."

ceed against BNDD Agent Clifton criminally for an act committed while operating in his official capacity. At that time, Judge Conti was General Duty Judge. The Clerk made the random drawing, and Judge Conti's name was drawn for the case. A Notice of Related Case was filed suggesting that the habeas corpus action might be related to Cause No. C–73–0054–SW, *Dickenson, et al. v. United States.* Judge Conti entered an order that the cases were not related, and set the habeas corpus for a hearing. At the hearing in September, 1974, Judge Conti granted the writ, thereby terminating the state prosecution against Agent Clifton.[24]

In the meantime, the State District Attorney handling the murder case notified Ryan of the habeas corpus case proceedings. Ryan says he then began an investigation "as to the manner by which the *habeas corpus* proceedings, so clearly related to and significant upon the civil case which Petitioner's counsel was handling in *Dickenson v. United States,* managed to come before the Honorable Samuel Conti."

Ryan's affidavit says that shortly after the writ was granted he "received information from an officer of the Court of a remarkable nature."[25] The information "alleged that the Honorable Samuel Conti and James L. Browning entered into an agreement to have the case heard by Judge Conti rather than Judge Williams.[26] The information given to me asserted in an *ex parte,* unrecorded meeting between the United States Attorney and Judge Conti in which the normal manner of assigning cases

could and would be disregarded, so that Judge Conti could make a decision on the merits of the Petition for Writ of Habeas Corpus." Ryan's claim is that such action amounted to a conspiracy to deprive the plaintiffs in the civil suit of their civil rights.[27] This information is strongly relied upon in the affidavit to disqualify.[28]

Ryan and Engel, his associate counsel in the civil suit for damages, then filed in such civil suit notice to take the depositions of Judge Conti, U. S. Attorney Browning and Court Clerk Ulfers. A motion to quash the notice and subpoena issued in pursuance thereof in relation to Judge Conti was filed. Judge Williams, following lengthy arguments, sustained the motion on the ground that it was improper to depose a sitting judge in regard to his official rulings. The parties agreed that the depositions of Browning and Ulfers would abide the ruling on the motion to quash the Conti notice and subpoena. The plaintiffs in the *Dickenson* case sought a writ of mandamus from the Court of Appeals to overcome Judge Williams' ruling. Paragraph 29 of one of Ryan's affidavits says: "The Court of Appeals upheld the decision by Judge Williams and therefore no depositions have been taken." Assistant United States Attorney, Richard Locke, represented Judge Conti in the above proceedings on the motion to quash. Also, Zagari complains that in the course of the arguments on the motion to quash Assistant U. S. Attorney Locke stated that Ryan's charges were an affront to the judiciary, a challenge of Judge Conti's integrity, and that he had restrained Judge

---

24. As has been previously pointed out, no question is made on the assignment of the habeas case as a result of the random draw. It was Judge Conti's judicial decision that the habeas case was not related to the civil action for damages that is under attack.

25. The identity of this alleged informant has been a secret closely guarded by Ryan.

26. The civil suit for damages was pending before Judge Williams.

27. It has been extremely difficult for this Judge to see how the plaintiffs in the *Dickenson* federal civil damage suit had a civil right or any other kind of right to use a criminal case

against one of the defendants to put the squeeze on the defendants to get more money out of them. This was the only relation between the habeas corpus action and civil damage suit.

28. Zagari makes no claim here that either Judge Conti or the U. S. Attorney knew that the state murder case was being used as a tool by Ryan to bolster his weak civil suit for damages, or that Ryan and the State District Attorney were "playing footsie" in the two cases, or that Ryan had been stalking Judge Conti in the habeas case.

Conti from answering the charges. There is no claim that Judge Conti was present at the hearing.

The first effort to connect the other cases with the present one was when Ryan wrote Judge Conti a letter on May 13, 1976, suggesting that he was going to file a motion to disqualify in the *Zagari* case if Judge Conti did not recuse himself. The grounds urged for disqualification were that Ryan and Judge Conti were embroiled in a controversy growing out of the incidents in the other cases above described. Judge Conti refused to recuse himself, and the present motion to disqualify was filed.

At the short hearing on the motion to disqualify, Ryan suffered another shock from which he has not recovered. Judge Conti had the temerity to ask who Ryan's informant was. In Ryan's opinion that inquiry was so unnatural as to show prejudice that would prevent Zagari from getting a fair trial before Judge Conti on his income tax evasion charges.

Judge Conti held that the grounds asserted in the motion and affidavits were legally insufficient. The proceedings that followed are picked up at the beginning of this memorandum opinion.

 This Judge is of the opinion that the motion to disqualify is insufficient to disqualify Judge Conti under either Sec. 144 or 455 for each of the following reasons:

1. The presumption of qualification has not been overcome.

 2. The affidavits do not set out the facts with the required particularity. This is particularly true of the claim that Judge Conti and U. S. Attorney Browning entered into a conspiracy to deprive the plaintiffs in the *Dickenson* suit of their civil rights by not transferring the habeas corpus case to Judge Williams' court. The informant is not identified. The affidavits do not say even on information and belief

that the conduct complained of took place. They say merely that the informant "alleged" that it did.[29] That statement amounts to almost nothing in a motion to disqualify. That would be true even if it were not the rule that affidavits must be strictly construed against the movant under Secs. 144 and 455.

3. The judge's statements and actions here complained of were judicial rather than extra-judicial in origin, as is required by the authorities cited earlier herein. The rule applies even though they took place in other litigation. *Lazofsky v. Sommerset Bus Co., Inc.,* D.C.N.Y., 389 F.Supp. 1041 (1975).

4. The alleged facts do not show any personal bias or prejudice against Zagari or any issue in his income tax evasion case here.

Zagari claims that his attorney and Judge Conti were embroiled in such a controversy in the other proceedings that he cannot get a fair trial unless Judge Conti is disqualified. *Davis v. Board of School Com'rs of Mobile County,* supra, was a case where the movant claimed that both Secs. 144 and 455 disqualified the trial judge on similar grounds. The following is quoted from that case:

"Construing §§ 144 and 455 *in pari materia* we believe that the test is the same under both. We thus hold that an appellate court, in passing on questions of disqualification of the type here presented, should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel. The determination should also be made on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context. This means that we give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and preju-

---

29. An affidavit may be based on information and belief. See Judge Gee's concurring opinion in *Parrish v. Board of Com'rs of Alabama State Bar,* supra, 524 F.2d at 105. However, more should be required than the statement that

some mysterious informer "alleged" something to an attorney for the movant in order to avoid turning disqualification proceedings over to those Judge Gee in the opinion above calls, "the unscrupulous or reckless affiant."

dice or when the impartiality of the judge might reasonably be questioned.

"Here, we have judicial activity toward lawyers without more and the result under §§ 144 and 455, considered separately and together, is that we find no error." 517 F.2d, at 1052.

The holding on this question in the *Davis* case, stated in the following language, is applicable here:

" . . . The controversy with the lawyers in the present case was not extra-judicial. Rather, it was very much judicial, consisting of langage in an order in the very case before the court, *and in an opinion in another case before the court.*" (Emphasis added). 517 F.2d, at 1051.

▮ The opinion in the *Davis* case makes it clear that it is not the purpose of Secs. 144 or 455 to enable the unscrupulous or reckless lawyer to engage in conduct in a course of litigation that might cause any conscientious judge to express, even in caustic terms, his disapproval of it, and thereby put himself in position thereafter to urge successfully motions to disqualify the judge in his subsequent cases before him. After pointing out that no personal prejudice against moving litigants there was claimed, the opinion in that case goes on to say:

" . . . They seek disqualification on an imputation theory—the bias against their lawyer is imputed to them. Read broadly, this peremptory challenge type of approach would bid fair to decimate the bench. *Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will.*" (Emphasis added). 517 F.2d, at 1050.

That Ryan recognized the tremendous power his position, if sustained, would give him and Engel (his associate counsel in the *Dickenson* damage suit), and the financial benefit likely to result therefrom is shown by the following quotation from the proceedings on the present hearing of the motion (Tr. 57):

"THE COURT: "Now, then, if your argument is accepted as true, wouldn't the folks who don't want Judge Conti to try their criminal cases be in good shape to go hire you or Mr. Engel and get rid of him?

"MR. RYAN: Judge, absolutely. There is no question about it. I wouldn't try and avoid the thrust of that question. There is no question about it.

"Not only that, I think, since it is a public proceeding and it is going to get around this town, which is called a big city, but as far as I'm concerned, having been a fifth-generation San Franciscan, it is a small town, and I don't doubt for a moment that the door will start beating down.

"Judge Conti is a very strong sentencing judge. We all know that in the criminal business. I can imagine a whole host of lawyers suddenly discovering that they need my able assistance in some cases so that they can ably assist Judge Conti out of the courtroom, which I might add is one of the reasons why I submitted a letter of suggestion of disqualification so that this whole thing wouldn't become public."

This opinion is too long already without going into a detailed discussion of all the warped, unreasonable and exaggerated conclusions drawn by Zagari and his counsel from the alleged facts in the affidavits. However, three of the remaining complaints will be briefly discussed.

▮ (1) Zagari complains of the fact that Assistant United States Attorney Locke represented Judge Conti in the proceedings involving the motion to quash the subpoena issued in pursuance of the notice to take his deposition, and that another Assistant from the U.S. Attorney's office is prosecuting his present income tax evasion case. He says that they are members of the same "law firm", and that he will be disadvantaged by their association. This claim is ridiculous on its face. The United States Attorney customarily represents a federal judge in matters involving his judicial actions. The motion to quash was sus-

tained on the basis that a sitting federal judge could not be deposed on matters connected with his official actions. The cases relied upon by the plaintiff are distinguishable on the ground that the judge in those cases had a *personal* rather than an official interest in the litigation in which the counsel in question had represented him. For instance, in *Texaco, Inc. v. Chandler,* 10 Cir., 354 F.2d 655 (1965), cert. den. 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853; the Court pointed out that in the previous litigation "plaintiff sought a $10,000,000 judgment against the Judge as an individual." If this argument of Zagari were valid, Judge Conti would be disqualified from presiding in any criminal case at least as long as Locke is an Assistant.

(2) Assistant United States Attorney Locke made the statement in his argument on the motion to quash the deposition subpoena that he had to restrain Judge Conti to keep him from entering a denial of Ryan's claim about the alleged conspiracy between the Judge and U. S. Attorney Browning. Ryan tried to project this statement to mean that Judge Conti was in a frenzy and was restrained only by use of excessive force. There is no justification for such construction. It was only natural that the Judge would want to deny the allegation if it was untrue. What his lawyer was saying to Judge Conti was that he thought joinder of issue by denial was unnecessary in the particular proceedings at the time. It turned out that his advice was correct.

■ (3) Zagari says that Judge Conti's inquiry during the hearing on the motion to disqualify about the identity of Ryan's mysterious, faceless informant showed such extreme prejudice that he cannot get a fair trial before Judge Conti. It would be enough to say that this question was asked in the course of a judicial proceeding. However, it was only a natural question for Judge Conti to have in his mind. The conclusions Ryan has drawn from his open expression of that question are unjustified.

Under the holding in *Davis v. Board of School Com'rs,* supra, the alleged facts relied upon by Zagari are insufficient to disqualify Judge Conti under Secs. 144 and 455, considered separately and together. It would be unreasonable to say that the facts here would support the conclusion that Judge Conti's "impartiality might reasonably be questioned" in this proceeding.[30] Stripped of all the blubber, the facts set out in the affidavits here show that Ryan was engaged in a highly reprehensible scheme to put the squeeze on the defendants in a civil damage suit by misuse of legal process in a criminal case. He was trying to help establish his civil claim in the federal court and to increase the settlement value thereof by the manipulation of a state court murder case against one of them. Judge Conti, without knowing the existence of the scheme, scuttled it by granting a writ of habeas corpus that put an end to the prosecution of the federal agent in the state court. Ryan was outraged, and claims that his subsequent court conduct questioning the order granting the writ created such a "controversy" between him and Judge Conti that the Judge will always be disqualified to sit in cases where he is counsel. He says that he realizes that if he successfully maintains that position, defendants in criminal cases and lawyers wanting to dodge Judge Conti will beat a path to his door. He claims that the only protection the public would have would be his desire to be ethical. That is the same lawyer who brazenly

**30.** *Parrish v. Board of Com'rs of Alabama State Bar,* supra, is the only present appellate court case that discusses the standard for determining under Secs. 144 and 455 the legal sufficiency of the affidavits supporting a motion to disqualify. The majority (11 Judges) holds that the standard is one that "requires that the facts be such, their truth being assumed, as would 'convince a reasonable man that a bias exists.'" The minority (3 Judges) said that the standard ought to be "one that merely requires that the facts be such, their truth being assumed, as would convince a reasonable man that the affiant reasonably *believed* that bias exists." 524 F.2d, at 108. *Since the Ninth Circuit Court has not passed on the standard, this Judge tested the affidavits by each of the standards and came to the conclusion that they were legally insufficient.*

acknowledged that he tried to enhance a civil claim for damages by prodding a criminal case against one of the civil defendants. The judicial system does not have to ride along with that.

An order is entered in connection herewith overruling the motion to disqualify Judge Conti.