# Ethical Issues Raised by Assistant United States Attorneys' Representation of Judges

A number of concerns are raised under the American Bar Association's canons of professional ethics when an Assistant United States Attorney (AUSA) is asked to represent a judge in his or her district in a suit brought by a private individual. These ethical concerns could be handled through disclosure of prior or pending representation to opposing counsel, by arranging to have the judge represented by an AUSA from another district, or by retaining private counsel to represent the judge.

November 2, 1981

## MEMORANDUM TO THE COUNSEL, OFFICE OF PROFESSIONAL RESPONSIBILITY, DEPARTMENT OF JUSTICE

This responds to your request for our opinion on several questions raised by the United States Attorney for the Southern District of California, M. James Lorenz.[1] These questions center around the ethical problems raised when an Assistant United States Attorney (AUSA) appears before a federal judge whom he is defending or has defended in a suit in which the judge is charged with depriving an individual of his constitutional rights. See 42 U.S.C. § 1983.[2] On April 13, 1981, this and related problems, including that of representing a judge sued for actions taken while he was a federal officer but prior to his nomination to the bench, were raised at a meeting of the Advisory Committee for United States Attorneys held at the Department of Justice. In September, this Office received a letter from the United States Attorney in Puerto Rico, Raymond L. Acosta, outlining cases in which AUSAs represented judges who had been sued for their handling of administrative matters involving the district court.[3] We believe that the present system of representation for judges by AUSAs raises recurrent ethical concerns that should be addressed at the highest levels of the Justice Department. We suggest that your Office convene a meeting that would

---

[1] We have solicited and received the views of the Civil Division on this question.

[2] Representation by the AUSA is authorized by the Department of Justice at the request of the Administrative Office of United States Courts. United States Attorneys' Manual, § 1-10.000 (1977).

[3] Letter from Raymond L. Acosta, United States Attorney for the District of Puerto Rico, to the Office of Legal Counsel, September 11, 1981 (Acosta Letter). For example, Mr. Acosta described one case in which his Office was simultaneously prosecuting a lawyer for trespass against the Navy and defending the entire district court from charges that the judge's refusal to admit the lawyer to the Puerto Rican bar was politically motivated.

involve, at the least, the Executive Office for United States Attorneys, the Civil Division, and the Deputy Attorney General, in order to draw up a uniform policy that will eliminate, to the greatest extent possible, these ethical concerns.

## I. Background

Most suits in which representation is requested appear to fall into the category outlined by Mr. Lorenz—the judge is sued for actions that are alleged to violate an individual's constitutional rights. Such cases will, we assume, be defended on the ground of absolute judicial immunity. Others, like Mr. Acosta's examples, arise in *Bivens*-type suits and mandamus actions stemming from administrative, rather than judicial, matters. These "demand more involvement on the part of the attorneys than is normally required in cases where the absolute immunity doctrine is applicable." Acosta Ltr., at 1.[4]

Permitting AUSAs to represent federal judges thus raises ethical concerns about which cases should be accepted and what, if anything, should be said to opposing counsel. These concerns are not matters of idle or academic speculation for the attorneys involved. At the Advisory Committee meeting, some of those present argued that a United States Attorney's office is analogous to a firm with one partner and a number of associates, and that the same considerations that bind the private bar also bind the government. *See Roberson* v. *United States,* 249 F.2d 737, 741 (5th Cir.), *cert. denied,* 356 U.S. 919 (1958) (United States Attorney is "of counsel" to all cases filed in his district). Others noted that as long as the judge was an AUSA's client, it was immaterial whether the suit was frivolous or easily defended, since the merit of a suit is not the usual test for whether an attorney-client relationship exists.[5]

Mr. Lorenz asked whether the judges should be forced to recuse themselves because the situation is one in which the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). We do not believe that it is appropriate for this Office to issue an opinion instructing the judiciary on its ethical duties. The individual judge, the appeals court, and the Administrative Office of the United States Courts, which is charged with issuing opinions on the ethical standards of judges, are the ultimate authorities for deciding issues of disqualifaction under 28 U.S.C. § 455. Rather, the issue for this Department is how to resolve

---

[4] We are unable to determine what percentage of requests for representation falls into each category, since not all decisions to represent judges are reported to the Civil Division or the Executive Office for United States Attorneys. Mr. Acosta reported four requests in the last three years.

[5] "[T]here invariably is at least an intangible interest on the part of any judge in having his actions vindicated." ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1331 (1975), at 1. Mr. Acosta expressed a concern that, in the real world, and especially in the administrative actions with which he was familiar, judges remembered the AUSAs who had not successfully defended their actions.

the ethical considerations for an AUSA, who, as the Attorney General's representative, appears before a federal judge whom he is or has represented.

## II. The Ethical Considerations

Attorneys employed by the Department are subject to the canons of professional ethics of the American Bar Association. 28 C.F.R. § 45.735-1(b). Canon 9 states: "A lawyer should avoid even the appearance of professional impropriety." To a layman, knowledge that the government's attorney has at some time also been the judge's attorney might well suggest that the AUSA will have an unfair advantage in practice before the judge. This was recognized in a recent ethics opinion in which a firm of private attorneys asked whether it could represent state judges "in actions brought against them under various federal statutes, including, presumably, [42 U.S.C. § 1983]." ABA Comm. on Ethics and Professional Responsibility (ABA Committee), Informal Op. 1331 (1975), at 1. The situation arose when the state's attorney general "declin[ed] to follow the practice of his predecessors" by providing the judges with state attorneys for their defense. *Id.*

The ABA Committee had some difficulty answering the question, noting that there was "no clearly controlling provision" in the Code of Professional Responsibility (CPR) and "no reference" in the Code of Judicial Conduct that was relevant. *Id.* at 2. "[I]n light of the sensitive problem in question," however, the ABA Committee turned to the ethical considerations of the CPR:

> For example, Canon 9 itself admonishes that "A lawyer should avoid even the appearance of professional impropriety." It is debatable whether serving in the capacity suggested is to be regarded as fulfilling the role of a part-time public officer. However, it is suggestive of the aspirational level of conduct suggested by the Code of Professional Responsibility that Ethical Consideration 8-8 suggests that "A lawyer who is a public officer, whether full or part-time, should not engage in activities in which his personal or professional interests are or foreseeably may be in conflict with his official duties." Obviously, contrary policy arguments can be made that this practice ought not to be discouraged by imposition of undue burdens upon counsel willing to undertake a commendable and often arduous task.
>
> Under the described circumstances, we conclude that the portions of the Code of Professional Responsibility relating to the avoidance of the appearance of impropriety suggest that in many instances it would be preferable for your firm not to appear before a judge who is then being

represented by you in these circumstances. Of course, it would be advisable, if possible, to effect an advance agreement with the court administrator establishing a procedure to avoid any conflicting representation.

*Id.*

In view of the obvious disadvantage to the fashioning of a categorical rule, especially because the factual contexts in which the question may arise are so diverse, we hesitate, as did the drafters of Opinion No. 1331, to assert that one solution or another is best for all the varied cases that arise in the United States Attorneys' Offices around the country. There are at least three alternatives that could be adopted. First, the AUSA could disclose his prior or pending [6] representation to opposing counsel. Disclosure of the representation will sustain the public's confidence in the judicial system by: (1) eliminating the suspicion that something was hidden should the fact of representation come to light later on; and (2) demonstrating that the government is willing to disclose information which is arguably relevant, even though the disclosure might be of use to the other party. Disclosure will also sustain the faith of the private bar in the integrity of government attorneys.[7] These considerations are grounded in the proposition that the impartiality of the judiciary is at the heart of its ability to enforce its judgments. Government attorneys have a special responsibility, as representatives of the Executive Branch in particular and of the government in general, to ensure that that impartiality is maintained.[8]

Given the sweep of the absolute immunity defense available in most cases and the fact that a prolonged attorney-client relationship probably will not develop between the AUSA and the judge, the disclosure should generally establish the lack of a basis for suspecting prejudice or favoritism on the part of the judge. There may well be unusual cases, however, in which representation is extensive, *see Stump* v. *Sparkman,* 435 U.S. 349 (1978), and the attorney-client relationship has become fully developed. Once the fact of representation has been disclosed, it would be for opposing counsel to decide whether to file a motion alleging bias or prejudice, 28 U.S.C. § 144, or for a judge to determine whether to recuse himself. 28 U.S.C. § 455; ABA Code of Judicial Conduct, Canon 3.[9] Another alternative would be for the opposing

---

[6] Whether an AUSA should ever appear before a judge whom he is then representing without disclosure to opposing counsel obviously raises a serious ethical question

[7] It will also help to prevent those attacks on the judiciary which tend to threaten its dignity and integrity. ABA Code of Professional Responsibility, EC 8-6.

[8] "Reasons which call for a high standard of conduct on the part of all attorneys are increased in the case of counsel for the government." Fahy, *Special Ethical Problems of Counsel for the Government,* 33 Fed. B.J. 331, 332 (1974).

[9] It should not be too burdensome for an AUSA to keep track of which judges he has represented. The disclosure will not violate Canon 4's injunction to protect client confidences, since the fact of representation is presumably a matter of public record. Nevertheless, the Executive Office for United

Continued

321

counsel to waive his right to seek disqualification of the judge. 28 U.S.C. § 455(e).[10]

Second, the judge could be represented by AUSAs from another United States Attorney's office. Since most cases involve motions to dismiss based on absolute immunity, which could be handled largely by mail, travel costs should be minimal. For those few cases involving more extended representation, we believe that the more extensive the attorney-client relationship, the more justified the cost would be to protect the AUSA and the judge from questions about their integrity.

Finally, the Department could insist that the Administrative Office of the United States Courts pay for outside counsel for the judges. *See* 53 Comp. Gen. 301 (1973).

We urge that this matter be resolved as promptly as possible in order to give the new United States Attorneys uniform guidance on an issue that will almost inevitably arise in their offices. Further, it would rescue judges from a dilemma in which acceptance of representation creates an ethical quandary both for them and for their attorneys.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

States Attorneys may wish to issue a notice to all judges that this fact will be disclosed in all future cases in order to avoid any embarrassment to the judge.

We do not believe that representation of a judge by one AUSA requires any other AUSA in the district to inform opposing counsel of the representation. The Judicial Conference Advisory Committee on Judicial Activities does not consider the United States Attorney's Office a private law firm. As a result, a judge whose son is an AUSA need not recuse himself from cases in which the government appears, as would otherwise be mandated by 28 U.S.C. § 455(b)(5)(ii). Advisory Committee on Judicial Activities, Advisory Opinion No. 38 (1974). *See also United States* v. *Zagari,* 419 F. Supp. 494, 505–06 (N.D. Ca. 1976) (representation by AUSA of judge on motion to quash subpoena does not require recusal when either AUSA or any other member of the United States Attorney's office appears).

[10] "Any justice . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Civil Division has expressed some concern that obtaining the waiver creates another set of problems: "It must be noted, however, that waivers will probably be closely scrutinized. A request by a judge for a waiver places counsel in the awkward position of acquiescing or openly doubting the court's impartiality . . . . Where a waiver is contemplated, then, the best procedure would be for the AUSA and his opponent to work it out among themselves at the AUSA's initiative and then present it to the judge."