The STATE OF IDAHO et al., Plaintiffs,

Claude L. Oliver, etc., et al., Plaintiff-Intervenors,

v.

Rear Admiral Rowland G. FREEMAN, III, Administrator of General Services, Defendant.

Civ. No. 79–1097.

United States District Court, D. Idaho.

Oct. 4, 1979.

David H. Leroy, Atty. Gen., State of Idaho, Boise, Idaho, Bob Corbin, Phoenix, Ariz., Mtn. States Legal Foundation, Denver, Colo., David Wm. West, Phoenix, Ariz., John L. Runft, Boise, Idaho, for plaintiffs.

Elisa B. Vela, Dept. of Justice, Washington, D. C., M. Karl Shurtliff, U. S. Atty., Boise, Idaho, for defendant.

Michael P. Farris, Eberle, Farris & Nelson, P. A., Spokane, Wash., for plaintiff-intervenors.

## MEMORANDUM DECISION

CALLISTER, District Judge.

Counsel for defendant has moved the undersigned judge to disqualify himself from further involvement in this action pursuant to 28 U.S.C. § 455(a). That section reads as follows:

> Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

In order to understand the arguments upon which defendant bases his motion, it is necessary to consider briefly the nature of the action before the Court.

The states of Idaho and Arizona, and numerous state legislators from both states, filed suit May 9, 1979, asking *inter alia* for the following declaratory relief:

1. A declaratory judgment that the legislature of the State of Idaho validly and effectively rescinded its prior ratification of the proposed twenty-seventh amendment to the United States Constitution, commonly known as the Equal Rights Amendment.

2. A declaratory judgment that the running of the seven-year ratification period terminates Idaho's ratification of the proposed amendment.

3. A declaratory judgment that congressional legislation purporting to extend the time allowed for ratification of the proposed twenty-seventh amendment is unconstitutional, ineffective, violative of the powers of the respective state legislatures, and beyond the powers of Congress to grant.

## I. DEFENDANT'S CONTENTIONS

The defendant observes that I hold a "prominent position" in the Church of Jesus Christ of Latter-day Saints ("Mormons"). The position I hold is that of Regional Representative. It is my responsibility to instruct local church leaders and to correlate the activities of the local units of the church. This position does not involve the setting of church policy. Moreover, all local and regional church leadership positions, including that of Regional Representative, are lay positions filled by members of the church who carry out their responsibilities in their spare time.

The defendant notes that the First Presidency of the Church of Jesus Christ of Latter-day Saints has publicly stated its opposition to the Equal Rights Amendment. In a statement of October 22, 1976, the First Presidency said:

> While the motives of its supporters may be praiseworthy, ERA as a blanket attempt to help women could indeed bring them far more restraints and repressions. We fear it will even stifle many God-given feminine instincts. It would strike at the family, humankind's basic institution. ERA would bring ambiguity and possibly invite extensive litigation.

As indicated by Attachments 1 and 4 of the defendant's motion, the First Presidency of the church also opposes an extension of the ratification deadline. Citing several reasons for its opposition, the church leaders expressed deep concern over "what appears to be a tampering with and an abuse of the process of amendment itself." Attachment 4 to Defendant's Brief. It should be noted, parenthetically, that the First Presidency, in issuing its statements, expresses its moral convictions, but does ·not presume to interpret the law.

Based upon the facts just recited, none of which is in dispute, the defendant asserts that there is a "reasonable basis to conclude that the Court's ability to consider the action before it in an impartial manner may be, or appear to be, impaired." Defendant's Brief at pp. 2–3.

## II. THE LAW OF DISQUALIFICATION

It is well settled that a judge is presumed to be qualified and that the movant bears a substantial burden of proving otherwise. *United States v. Zagari*, 419 F.Supp. 494 (N.D.Cal.1976). Furthermore, the Court has a sworn duty not to disqualify itself unless there are proper and reasonable grounds for doing so. *Blizard v. Fielding*, 454 F.Supp. 318 (D.Mass.1978). It also bears noting that a judge is not prevented from sitting because he comes into every case with a background of general personal experiences, associations and beliefs. *In re Union Leader Corp.*, 292 F.2d 381 (1st Cir. 1961); *see also Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 388 F.Supp. 155 (E.D.Pa.1974).

With respect to a disqualification motion under § 455(a), the cases have established a reasonable man standard for testing a judge's impartiality. "The test under [§ 455(a)] is not the subjective belief of the defendant or that of the judge, but whether facts have been presented that, assuming their truth, would lead a reasonable person reasonably to infer that bias or prejudice existed, thereby foreclosing impartiality of judgment." *United States v. Corr*, 434 F.Supp. 408, 412–13 (S.D.N.Y.1977). *See Baker v. City of Detroit*, 458 F.Supp. 374 (S.D.Mich.1978); *United States v. Conforte*, 457 F.Supp. 641 (D.Nev.1978); *Paschall v. Mayone*, 454 F.Supp. 1289 (S.D.N.Y.1978); *United States v. Baker*, 441 F.Supp. 612 (M.D.Tenn.1977).

The test boils down to a balancing of several factors. On the one side of the scale lies the right of every litigant to have his cause decided by an impartial tribunal. Several cases have indicated that even the

*appearance* of impartiality is enough to require disqualification. *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir. 1978); *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir. 1977); *Smith v. Pepsico, Inc.*, 434 F.Supp. 524 (S.D.Fla.1977). *But see United States v. Olander*, 584 F.2d 876 (9th Cir. 1978); *Davis v. Board of Commissioners*, 517 F.2d 1044 (5th Cir. 1975). On the other side of the scale lie both the presumption of qualification and the policy against allowing litigants to engage in judge-shopping. The Senate Judiciary Committee issued the following warning in discussing the revised § 455:

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are, in fact, seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice. S.Rep.No. 93–419, 93d Cong., 1st Sess. 1973, p. 5 (emphasis in original).

## III. THE SUFFICIENCY OF DEFENDANT'S CONTENTIONS

As a member of the Church of Jesus Christ of Latter-day Saints, I have undertaken the obligation to live the Christian doctrines as they are taught by the church, to assist the church in teaching these doctrines and to help provide for the temporal and spiritual needs of those belonging to the church. Defendant stresses the position which I hold as though it makes a difference in my obligations to the church. I do not believe it does. All members of the church have undertaken these same obligations and almost every active member holds some office or position of trust in the church. Defendant's motion essentially avers that any lay member of the church would be disqualified to sit on this case by reason of his membership in the church.

Defendant misconceives the relationship between churches and the Government. In our Nation, religion and government operate in separate spheres. The churches of this land, including the Church of Jesus Christ of Latter-day Saints, are involved in teaching things of a religious nature, including the moral obligations of those who believe in God and have the hope of resurrection and of a life hereafter in God's kingdom. The churches' jurisdiction over their members extends only to their standing in the church, and the only authority which the churches claim is the right to represent the God they worship, in matters pertaining to His kingdom as they see and understand them. They have a right to expect that their members conform to church teachings and standards in matters of religious worship and moral conduct. Churches have been a primary moral force in the development of this Nation and are largely responsible for its success. However, religious societies have never claimed, nor have they been given, the right to interfere with the relationship between governments and their citizens, though they frequently and regularly encourage their church members to exercise the political rights which they possess to obtain proper representation and consideration in the legislatures of the states and of the Nation.

Alongside the churches, and co-existing with them, is the government of the United States and of the various states, which governments have the right and the obligation to make laws governing the relationships of its citizens. The citizens, in turn, are obliged to obey those laws and sustain the government which protects their constitutional and statutory rights. I recognize the sense of a dual citizenship in the church and in the Nation, with obligations running to each, but I sense no conflict in these obligations. I know of no man who agrees with every law that has been enacted by the Congress of the United States, and yet as citizens we recognize the obligation to

obey and sustain those laws unless and until they can be changed by the lawful political process. The right to change the law belongs to Congress, not to the courts. It is frequently the lot of judges to uphold the validity of laws with which they personally disagree. They have been trained to do so.

In this case, it is not claimed, nor could it be, that I have ever publicly expressed any opinion regarding the Equal Rights Amendment, participated in any demonstration for or against the amendment, or in any way involved myself improperly in the political process. The challenge is based solely upon the teachings of the church to which I belong. The teachings of the Church of Jesus Christ of Latter-day Saints include many ideals and principles which would govern in the perfect society. Nevertheless, church leaders have always taught that these principles can only be implemented when a majority of the people wish to implement them.

The church teaches that its members have a responsibility to seek the enactment of laws which are just and which protect the morality and freedom of the citizens of the land. However, the church has never taught either that it has any place influencing judges in their interpretation of the laws, or that a judge's religious beliefs take precedence over his sworn duty to uphold the Constitution and laws of the United States. There is a crucial distinction between legislative chambers, where everyone (including churches and religious groups) may express their opinions and lobby for the passage or defeat of a particular piece of legislation, and judicial chambers, where any attempt to bring pressure to bear on judges or to lobby for a particular decision would be totally improper. As a judge, I have no obligation to the church to interpret the law in any manner other than that which is required under the Constitution and the oath which I have taken. Under the facts as presented, a reasonable person would not conclude that impartiality of judgment in the instant case is foreclosed by virtue of the position that I hold in the Church of Jesus Christ of Latter-day Saints. *United States v. Corr, supra.*

It also bears noting that, despite defendant's contentions to the contrary, the merits of the Equal Rights Amendment are not an issue in this lawsuit and will not be considered or discussed by the Court or by those representing the different parties. The issues in this case are two-fold: (1) May a state legislature rescind its prior adoption of a proposed constitutional amendment; and (2) May Congress extend the ratification period after the period originally designated by Congress has elapsed. Obviously, the determination of these issues is not affected by the merits of a proposed amendment.

It is rather ironic that defendant should raise the issue of judicial prejudice in this particular action. It is apparent that in this case the district court is only a conduit for passing these issues on to the circuit court and ultimately, the Supreme Court of the United States. It is obvious from the pleadings that the evidence will almost entirely consist of public documents and records about which there is no dispute. In such a case, the rules which the appellate courts follow permit them to utterly disregard the district court's decision and to review the evidence and the law as if the case had been initially tried before them.

Even though the district court decision will receive little or no regard on the appellate level, as a judge, it is necessary to give the matter the utmost consideration and to carefully hear the arguments of counsel and to review the evidence. Due to the novel constitutional issues involved, and the public interest which it has attracted, it is certain that many motions will be filed, long briefs written, and considerable Court time expended in the trial of this case. Since cases are assigned by lot in this Court, my disqualification would only mean that another judge would be required to assume my duty. Although those judges are most cooperative and would not complain, it is unfair and unwise to disqualify without reason.

For the foregoing reasons, I am of the opinion that the motion to disqualify has no merit and must be denied.