UNITED STATES of America, Plaintiff,

v.

FIAT MOTORS OF NORTH AMERICA, INC., a corporation.

Civ. A. No. 80–25.

United States District Court,
District of Columbia.

April 15, 1981.

Surrell Brady and Robert Nesler, Dept. of Justice, Washington, D. C., David Allen, Dept. of Transp. Nat. Highway Traffic Safety Administration, Washington, D. C., for plaintiff.

John H. Korns, Harry W. Cladouhos, Paul M. Laurenza, Cladouhos & Brashares, Washington, D. C., for defendant.

MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Fiat Motors of North America has moved for disqualification of this trial judge from further presiding over this litigation or alternatively for discretionary transfer and reassignment of the proceeding to another judge. Following an April 3, 1981 hearing on the motion, I orally ruled and denied the defendant's motion. The reasons for that determination are discussed in this opinion.

Throughout the course of this litigation the Court has endeavored to steer the proceeding promptly and expeditiously through required and necessary discovery, leading to a possible narrowing of issues and to otherwise place the matter in such a posture for final disposition—either by way of motion or by a trial on the merits. At times it appears that the Court's efforts—by design or otherwise—have been thwarted by either one or the other counsel.

## BACKGROUND

On January 4, 1980, the Government charged Fiat Motors of North America with violating the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381, *et seq.* The complaint filed with this Court specifically charged Fiat with failing to remedy safety defects on several models of its motor vehicles. The Government alleged that certain designated Fiat models were subject to severe rust and corrosion of critical undercarriage components, which in turn affected their operational safety, more particularly the problem of control or lack of control of the motor vehicle. On the same day that the complaint was filed, the National Highway Traffic Safety Administration issued a final order requiring Fiat to recall those vehicles. In this proceeding the Government seeks enforcement of that recall order.

Several months before the present complaint was filed in this Court, Fiat, as plaintiff, had already instituted an action against the Traffic Safety Administration in the Southern District of New York.* That proceeding was filed in September of 1979. Fiat charged there that the Government's administrative proceedings, brought to determine whether Fiat had violated the Safety Act, deprived it of constitutional and statutory rights as well as access to an impartial tribunal. Fiat's request for a preliminary injunction restraining the Government from conducting a hearing on this matter was denied. Meanwhile, Fiat moved in the Southern District proceeding to file a supplemental complaint challenging the January 1980 recall order. At a February 6, 1980 hearing, Judge Milton Pollack granted Fiat's request to file a supplemental complaint, but held the New York action in abeyance pending a ruling by this Court on whether the two actions should be consolidated in this jurisdiction.

On February 7th, Fiat moved to transfer this proceeding to the Southern District of New York and to dismiss portions of the complaint on the ground that the Government filed suit before Fiat had notice and an opportunity to comply with the January recall order. The Government, in turn, moved to consolidate the New York action in this Court. On May 5th, I denied Fiat's motions and ordered the Southern District action consolidated with this proceeding. The company then immediately moved for clarification of the denial of its dismissal motion and for certification of the consolidation order and for interlocutory appeal. I provided them with the clarification, but denied certification. They then sped to the Court of Appeals, petitioned for a writ of mandamus seeking vacation of the Court's consolidation order. The petition was denied. Fiat then filed a petition for a rehearing and a suggestion for rehearing en banc. This was also denied.

Since consolidation, this proceeding has been mired in and held back by a series of requests to extend the deadlines established for completion of discovery, motions to compel and motions for protective orders. I need not recount the details of how the discovery proceeded, indeed, how it has been detoured and needlessly protracted. Nonetheless, a few incidents are illustrative.

Although the Government filed a Rule 30(b)(6), Fed.R.Civ.P. notice of deposition in August of 1980 seeking designation of representative employees or officials to testify on Fiat's behalf on matters of automobile construction, it was not until November 20th, and only pursuant to a direct order from this Court, that Fiat finally identified

* *Fiat Motors of North America v. Department of Transportation, et al.,* 489 F.Supp. 13, United States District Court for the Southern District of New York.

and designated the representative person for that purpose. When through discovery the Government obtained names on its own of persons at Fiat of Italy whom it believed were otherwise competent to testify on these matters, defendant then moved for a protective order, objecting to the Government's attempt to depose these witnesses overseas within the 30 days left for discovery. Reminding the Court that it could force the Government to obtain information from these persons or depose them by letters rogatory, Rule 28(b)(3), Fed.R.Civ.P., a time-consuming procedure, it offered to cooperate and produce these witnesses if discovery was extended. Discovery was twice extended to accommodate the company's request.

Fiat's most recent motion for a protective order sought to bar the National Highway Traffic Safety Administration from obtaining rust and corrosion information from other motor vehicle manufacturers pursuant to an administrative order and subpoena. The Court denied this motion at a hearing on January 23, 1981. Whereupon Fiat immediately moved orally for certification of the denial for interlocutory appeal and another extension of discovery. The two motions were denied. On January 26th, Fiat applied for a stay of the Traffic Safety administrative order pending a ruling by the Court of Appeals on its petition for a writ of mandamus. This application was denied January 27th. Fiat then filed a second petition for mandamus. The application was denied by the Court of Appeals on February 3rd. A petition for rehearing and suggestion for rehearing en banc were likewise denied on March 12th.

Finally, on March 3, 1981, nearly 14 months after the Government brought this suit, Fiat filed the present motion seeking my disqualification from further presiding over this matter, or, alternatively, that I exercise my discretion and transfer this matter to the Calendar Committee for reassignment to another judge.

After a full consideration of the parties' memoranda of points and authorities, and the argument of counsel, I conclude that

Fiat's motion is frivolous and must be denied. The factual basis for the motion is weak; the legal authority is tenuous. In sum, the motion is devoid of merit.

## LEGAL ANALYSIS

Fiat's counsel asserts several grounds as the basis for disqualification. First, he claims that it was only recently learned that in 1975 I was involved in an automobile accident from which I sustained permanent, severe, crippling injuries and loss; that it is alleged in the Government's complaint that certain of defendant's vehicles contain safety defects; that in this nonjury case I will rule on a number of factual questions and legal issues all related to motor vehicle safety and risks of accident. Fiat's counsel then arrives at the conclusion that it does not believe that any human being who has suffered such serious injuries and loss by an automobile, as I have, can determine such issues impartially and under the circumstances that it would be unreasonable to compel their company to run the substantial risk of partiality—and expose them to potential liability in staggering amounts. The company states that since my impartiality may reasonably be questioned, it should not be required to run that risk gauntlet and that I should be disqualified.

Secondly, Fiat claims that at a recent January 23, 1981 hearing, I made a comment which clearly indicates that I prejudged an issue in this proceeding—relating to the state of the art at the time that the vehicles involved in this litigation were produced and the corrosion experience of other motor vehicle manufacturers. It is claimed that this, too, demonstrates my bias against Fiat Motors.

In October 1975, as a pedestrian, I was involved in an automobile accident. I sustained injury to my left leg and other minor losses. Later, I underwent surgery and an amputation above the left knee. I returned to duty in the early spring of 1976 and have since continued without incident or interruption.

The defendant's motion has been certified as to good faith by its counsel as required by the statute. The motion is supported by a seven-page affidavit of Gerald Fallon, Fiat's General Counsel and Vice President. Several documents are attached to Mr. Fallon's affidavit: the official police accident report on the 1975 automobile accident; a news article of November 11, 1979, written several years later after I had resumed my judicial responsibilities; and a third attachment, a 1975 release of the National Highway Traffic Safety Administration. Several footnotes to the affidavit refer to the negligence litigation I pursued in the District of Columbia Superior Court, a civil proceeding seeking damages arising from the injuries I sustained in 1975. The 1979 news article is of questionable relevancy.

■ In advancing the motion, Fiat relies on sections 144 and 455 of Title 28 U.S.C., as well as the Court's inherent authority to exercise discretion and to voluntarily relinquish the assignment. Section 144 requires the trial court to withdraw from a proceeding whenever a party "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party." It is clear that where, as here, such an affidavit is filed, accompanied by a good-faith certificate of counsel, the Court must accept the affiant's statement of facts as true and pass only on their legal sufficiency in demonstrating bias or prejudice. *Berger v. United States*, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481 (1921) (Applying this standard to section 21 of the Judicial Code, the precursor to section 144); *United States v. Haldeman*, 559 F.2d 31, 131 (D.C.Cir.1976) (en banc) (per curiam), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). It is also well-settled that a section 144 affidavit mandates a judge's disqualification only if the reasons and facts set out for the belief "give fair support to the charge of bent of mind that may prevent or impede impartiality of judgment." Only under those circumstances is recusal or disqualification required. *Berger*, 255 U.S. at 33–34, 41 S.Ct. at 233; 13 *Wright & Miller, Federal Practice and Procedure*, § 3551 (1975 & Supp.).

■ Section 455(a) places a duty upon a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." Subsection 455(b)(1) requires disqualification where the judge "has personal knowledge of disputed evidentiary facts concerning this proceeding." Those provisions were enacted as part of the 1974 amendments to section 455, which brought the statute into conformity with the Canons of Judicial Conduct. H.R.Rep. No. 93–1453, 93rd Cong., 2d Sess. 1–2 (1974), U.S.Code Cong. & Admin.News 1974, p. 6351. As to the appearance of impartiality provisions of subsection (a), the Court is required to apply an objective standard. This disqualification would be required if the Court were to conclude that a "reasonable [person], were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Potashnick v. Port City Construction Company*, 609 F.2d 1101, 1111 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); 13 *Wright & Miller*, § 3549.

■ I turn now to the Fallon supporting affidavit. It falls far short in satisfying the criteria and standard imposed by § 144. It is factually and legally deficient and otherwise flawed. The relied-upon "facts" are a mere recitation of the events chronicled in the 1975 accident report, the civil complaint later filed on my behalf, excerpts from depositions in that proceeding, and excerpts from the questionable news article. The affidavit does refer to the serious injuries and losses I sustained in the accident.

The most noticeable flaw in Fallon's affidavit is that it fails to point to any fact bearing on this litigation or any extrajudicial attitude or statement that I have ever made or directed toward Fiat of North America or any of its corporate affiliations. He does not state that my complaint for damages involved any claim of automobile safety and defects. He does not state that a Fiat motor vehicle was involved in my accident or that the civil complaint filed by me as a result of the accident involved any

automobile manufacturer or any liability on the part of a manufacturer. The reason for such omissions is, of course, obvious. The several paragraphs of the affidavit which attempt to link my injuries with a "bent of mind" against the defendant are no more than speculative and unsupported assertions. He then advances an unwarranted conclusion that, because I sustained loss of a limb in an automobile accident, I would be unable to preside in an impartial manner and without bias in litigation involving automobile safety.

■ The outer limits of a supporting affidavit have been defined by our Court of Appeals; the affidavit must "show a true personal bias, and must allege specific facts and not mere conclusions or generalities." *Brotherhood of Locomotive Firemen and Enginemen v. Bangor and Aroostook Ry. Co.*, 380 F.2d 570, 576 (D.C.Cir.1967) (citations omitted). The Fallon affidavit fails to meet this minimum standard. Moreover, a trial judge is presumed to be impartial and the affiant assumes a heavy burden in demonstrating the contrary. *United States v. Mitchell*, 377 F.Supp. 1312, 1316 (D.D.C. 1974), *aff'd sub nom., United States v. Haldeman, supra.*

A consideration of the defendant's motion that section 455 warrants my disqualification leads to the same result. Subsection (a) focuses on the appearance of impartiality as opposed to the existence, in fact, of any bias or prejudice. As noted earlier, this section was designed to promote the public's confidence in the impartiality and integrity of the judicial process, and if there is any reasonable factual basis for doubting the trial court's impartiality, the judge should step down. The standard for disqualification in this case is whether a reasonable person, knowing all the circumstances concerning my injury and disability and considering the factual issues involved in this proceeding, would have an adequate basis for harboring doubts about my impartiality in presiding over this proceeding. *Potashnick*, 609 F.2d at 1111; *Rademacher v. City of Phoenix*, 442 F.Supp. 27, 29 (D.Ariz.1977). Under this standard it is clear that such doubts could not reasonably exist.

Indeed, the logical extension and result of Fiat's argument would require my disqualification in a substantial number of other proceedings. If, in fact, my injuries and losses would cause a reasonable person to question my ability to render impartial judgments on questions of automobile safety and defects, would it not also lead a litigant to raise questions about my impartiality in any personal injury litigation involving an automobile? If the defendant's position were accepted, would it be proper for me to preside in any trial involving a serious personal injury claim, whether it stems from a motor vehicle collision, an aircraft disaster, an industrial explosion or any of an endless list of other types of accidents resulting in serious personal injury?

While Fiat's argument may at first blush seem to have a surface allure, on close examination and careful analysis it soon unravels. The unfortunate incident which I experienced several years ago is, of course, lasting in nature, but it is no more lasting than some of the personal and background experiences of other trial judges where disqualification attempts were advanced by a litigant and denied. As Fiat's counsel has pointed out, no case authority directly on point or similar to the situation here, involving disqualification or recusal, has been found. However, several recent cases have presented factual situations in which a litigant has focused on a particular background characteristic of personal experiences of the presiding judge.

In *Parrish v. Board of Commissioners*, 524 F.2d 98 (5th Cir. 1975) (en banc) (Tuttle, Goldberg, dissenting, Wisdom separately dissenting), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976), the Fifth Circuit upheld the denial of a recusal motion under sections 144 and 455. The plaintiffs sought to disqualify a district court judge who was a former officer and still maintained membership in the Alabama State Bar Association which once barred blacks. They claimed that he could not rule in a case alleging that the Bar Association

discriminated against blacks. The majority held that the affidavit in that case, like the one here, only set out general facts regarding the judge's background and was insufficient and fell short of making the required showing of personal bias. In *Paschall v. Mayone*, 454 F.Supp. 1289, 1299–1301 (S.D.N.Y.1978), a case involving alleged prison beatings in violation of the plaintiff's civil rights, the defendants moved to disqualify the trial judge because of his frequent representation of prisoners in civil rights cases while an active litigator with the NAACP Legal Defense Fund. The trial judge denied the motion, rejecting the claim that his prior litigation experience gave rise to any appearance of impartiality. Judge Constance Motley, also a NAACP litigator, denied efforts to secure her disqualification in a class action charging sex discrimination under Title VII of the Civil Rights Act of 1964. *Blank v. Sullivan & Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y.1975). She rejected defendant's argument under sections 144 and 455 that her strong identification with the victims of discrimination provided any showing that she would be biased in the case against that law firm. Judge Leon Higginbotham, as a trial judge, denied a recusal motion based on similar allegations in *Commonwealth of Pennsylvania v. Local 542 International Union of Operating Engineers*, 388 F.Supp. 155 (E.D.Pa.1974). There a labor union charged with racial discrimination in the construction industry claimed that he could not decide the case impartially because of his long identification as a spokesperson for racial integration and because of a speech he had recently given before a predominantly black historical group. These facts, Judge Higginbotham concluded, showed only the "ordinary results" of experiences in "this day and generation" and did not in any way demonstrate bias.

The personal background and experience of a trial judge has also been found legally insufficient for disqualification in a variety of other situations. For example, in *United States v. Clark*, 398 F.Supp. 341, 361–63 (E.D.Pa.1975), *aff'd without opinion*, 532 F.2d 748 (3rd Cir. 1976), Judge Herbert

Fogel, of the Eastern District of Pennsylvania, denied the recusal motion based on his personal friendship with a kidnap victim in a criminal proceeding where the defendant was charged with a bank robbery by taking a hostage. Also, in *State of Idaho v. Freedman*, 478 F.Supp. 33 (D.Idaho 1979), Judge Marion Callister denied the recusal motion in a case challenging the ratification process for the Equal Rights Amendment because of his "prominent position" in the Mormon Church.

A 1948 opinion of our Circuit Court succinctly stated the standards for disqualification to be applied:

> Prejudice, to require [recusal], must be personal according to the terms of the statute[s], and impersonal prejudice resulting from a judge's background or experience is not, in our opinion, within the purview of the statute[s].

*Eisler v. United States*, 170 F.2d 273, 278 (D.C.Cir.1948), *cert. dismissed*, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (1949). None of these decisions lend support to Fiat's claim that I am or even appear biased because of my injuries. Although Eisler addressed only section 21 of the Judicial Code which, like its successor section 144, required a showing of actual bias for recusal, as defendant. points out, our Court of Appeals had read that provision as applying an appearance of bias standard for recusal before *Eisler. See Whitaker v. McLean*, 118 F.2d 596 (D.C.Cir.1941).

Fiat's second argument, not urged or addressed at the April 3rd hearing, will nonetheless be considered. The claim that I had personal knowledge of disputed evidentiary facts is based on my comment at a recent January 23rd status conference—that problems of rust and corrosion by other automobile manufacturers similar to those alleged to have been experienced by Fiat in this case have not been a matter of the public's attention. Fiat argues that this comment shows prejudice and a prejudgment of an issue in the case; that the comment demonstrates that because of my injuries I have taken a peculiar and particular interest in matters involving automobile defects and

consequently I have personal knowledge of evidentiary matters in this case.

 Fiat has inflated the significance of that statement. It was no more than a comment at a discovery motion hearing as to my knowledge of the state of the record and the pleadings, as then developed by the parties. The suggestion that I made an evaluation of relevant evidence outside the scope of this proceeding and the suggestion that I had made a prejudgment of material, factual or legal issues is misplaced, exaggerated and a gross misunderstanding of the Court's comment. Standing alone, or in context, the statement does not show a fixed opinion or a closed mind on the merits. In any event, the statement was made in open court and on the record. Under the statute "alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits of some basis other than what the judge learned from his participation in the case." *United States v. Grinnel Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *Accord, In re International Business Machines Corp.*, 618 F.2d 923, 927–28 (2d Cir. 1980).

In conclusion, putting aside all that has been said—the repetitive statements, the comments and concerns set out in the Fallon affidavit about my injuries—Fiat fails to identify or to state that I have exhibited any personal bias or prejudice against their company. The affidavit does not contain one unequivocal allegation of bias or prejudice attributed to me, nor can it, for none exists. Nor is the affidavit sufficient to fairly support any such inferences. Further, I know of nothing that would lead a reasonable person to question my interest in this case.

My only concerns with this proceeding are that all the relevant facts be fully revealed; that the law be applied correctly and evenhandedly and that this litigation advance through the discovery and pretrial stages without unnecessary and unwarranted delay. Fiat must, indeed, recognize that auto safety is an issue of general concern in this country, and that, in fact, was recog-

nized by the Congress when it enacted the statute at issue in this case. This proceeding has been assigned to me for trial, and that is the extent of my interest. The attempt to exaggerate any generalized interest in auto safety into a specific bias by citing injuries sustained is simply insufficient on its face.

The present efforts of Fiat rest on a crimped and distorted consideration of the facts and a superficial analysis of the applicable law. The defendant's motion is baseless and it is denied.