**James R. ELLIS, Plaintiff,**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, and Provident Life & Casualty Insurance Company, Defendants.**

**No. 96 Civil 2484 (MP).**

United States District Court,
S.D. New York.

May 21, 1997.

*OPINION*

POLLACK, Senior District Judge.

Plaintiff seeks an Order pursuant to 28 U.S.C. § 455(a) disqualifying the Honorable Milton Pollack to whom this action is assigned and reassigning this case to another Judge. This is the second attempt to obtain a new Judge for Mr. Ellis' claims against the defendants for alleged violation of age discrimination laws. Mr. Ellis deemed that his New York territory should not have been divided and in his earlier age discrimination case ("Ellis I"), he sued his employers charging that "[t]he division, of Mr. Ellis' territory constitutes a demotion," (Compl. ¶¶ 32, 33), and since the new additional branch manager was under 40 years of age and he, Ellis, was 52 years old, that his employers were guilty of age discrimination under federal and state laws. Ellis I was decided in favor of defendants, appealed to the Second Circuit Court of Appeals and unanimously affirmed on February 24, 1997. The Court of Appeals for the Second Circuit turned down the first attempt in Ellis I from the same source finding that "the district judge's comments and questions were within the wide latitude accorded to district judges in this circuit in their conduct of a non-jury trial."

This case, Ellis II, has only recently emerged from the pleading stage. The stated ground for the relief sought here is that "Judge Pollack appears to have pre-judged the merits of Plaintiff's contract claims in this action, and has demonstrated hostility towards Plaintiff's attorneys for raising the issue."

The Liddle affidavit offers in support of the motion that "the Court pre-judged Plaintiff's contract claims during the trial of Plaintiff's age discrimination case ('Ellis I'), which was tried April 15–18, 1996."

The moving papers recite that Ellis had every reason to believe that he too had an implied contract with defendants because a Florida Court had rendered a judgment in favor of a Florida branch manager of the defendants on the finding that defendants had breached the implied contract with the branch manager plaintiff there when his territory was reduced in size and was awarded

large damages to which Ellis claims he too is entitled in his claims against defendants.

After asserting those irrelevancies about the Florida manager's good fortune, Mr. Liddle adds that his firm was not successful in their motion to transfer this case (Ellis II) out of New York to Tennessee, and that attorney Batson on Mr. Liddle's staff believed he had detected on the argument of the transfer motion that the Court may have prejudged the merits of this case (Ellis II), because the Court had remarked that he assumed that Ellis I had foreclosed some issues to be tried in this case. Unfortunately for the contention, the transcript of the argument showed that the Court, referring to the open issues in this case said: "I don't know what they are at this point because I have not studied the case for that purpose."

Before going any further, it might be instructive to see what Mr. Liddle wrote in his brief to the Court of Appeals in Ellis I, albeit as he admits, he appealed that case on his assertions that the Court held an evident bias against his client due to a pre-judgment of the case.

> Judge Pollack never gave the impression that he disliked Mr. Ellis or his counsel, that he had any special feelings for the defendants, or that there existed any extrinsic facts or relationships that would prevent the court from conducting the trial free from any appearance of impropriety. (Ellis Reply Br. at 3)

In a recent case, the Supreme Court established that:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994) (emphasis in original) (citation omitted). Suffice it to say that I confidently and unequivocally state that there is no reasonable basis for questioning this Court's impartiality. I can sincerely say that this Court has no interest in the outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied as similarly stated in *Farkas v. Ellis,* 768 F.Supp. 476, 480 (S.D.N.Y.1991).

The Courts when faced with similar groundless § 455 motions such as this one have regularly cautioned against permitting judge shopping by litigants as inconsistent with the end of justice, going so far as to indicate a duty to sit in the face of scurrilous and unworthy attacks for ulterior ends by some counsel. "[E]ach judge, must be alert to avoid the possibility that those who would question his impartiality are, in fact, seeking to avoid the consequences of his expected adverse decision." *Idaho v. Freeman,* 478 F.Supp. 33, 36 (D.Id.1979) (citing the Senate Judiciary Committee). The subject need not be explored further in this connection. There is no legal, ethical or practical ground for this Court to step aside from the administration of this case until it is duly completed.

Motion denied.

So Ordered.